**PENDERY et al. v. PANHANDLE REFINING CO. et al.**

No. 14448.

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 15, 1943.

Rehearing Denied March 19, 1943.

768

Smithdeal & Lefkowitz, of Dallas, for appellant C. C. Pendery.

W. E. Fitzgerald, of Wichita Falls, for appellant Mary Elizabeth Reilly.

C. J. Shaeffer, of Dallas, for appellants Phil C. Griffin et al.

Don Emery and Rayburn L. Foster, both of Bartlesville, Okl., and E. H. Foster and Warren M. Sparks, both of Amarillo, for appellee Phillips Petroleum Co.

Geo. W. Cunningham, Ralph J. May, and W. D. Masterson, Jr., all of Tulsa, Okl., and Harris & Martin, of Wichita Falls, for appellee Shell Oil Co., Inc.

Brannan & Tipps, of Wichita Falls, for appellees Ned C. Griffin et al.

Bullington, Humphrey & Humphrey, R. C. Stanford, and Kilgore & Rogers, all of Wichita Falls, for appellees Charles Pettit et al.

Arch Dawson, of Wichita Falls,t and J.

Arch Dawson, of Wichita Falls, and J. W. Akin, of Dallas, for appellee Geier Brothers, Inc.

W. B. Handley, of Dallas, for appellee Earl Fain.

A. H. Carrigan and T. R. Boone, both of Wichita Falls, and John Kilgore, of Dallas, for appellees Joe B. Carrigan and Luther Hoffman.

SPEER, Justice.

This appeal involves many complications. The four large volumes of transcribed testimony, a dozen or more large plats, nearly seven hundred pages in the transcript, along with six sets of briefs and nearly as many reply briefs, the many interested parties and their respective adverse interests and cross-actions against each other, render it difficult to make an understandable statement of the case prior to discussing the points presented for reversal of the judgment entered.

Mrs. C. C. Pendery (formerly Mary Margaret Reilly), joined by her husband, to whom she was married since the institution of this suit, by her third amended original petition in trespass to try title sued Panhandle Refining Company, Phillips Petroleum Company, Shell Oil Company, Royal Petroleum Company and Geier Brothers, Inc., all corporations; Mary Elizabeth Reilly (mother of plaintiff), Luther Hoffman, Joe B. Carrigan, Jerome S. Stone and Helen Stone Anderson, individually and as independent executor and executrix, respectively, of the estate of J. W. Stone, deceased, E. P. Griffin, C. W. Boller, Mrs. Johnie P. Griffin, James H. Griffin, Ned C. Griffin, Mrs. Sadie P. Griffin, W. M. Taylor, Charles Pettit, Jack Jeffus and thirty-nine other presons and corporations, whose names we think it unnecessary to mention, to recover (a) an undivided one-half of the surface of the Floyd Jordan Survey in Wichita and Archer Counties, (b) an undivided one-half of the surface and an undivided interest in the minerals of five tracts of alluvial land attached by the process of accretion to said Floyd Jordan Survey, (c) an undivided one-half of the minerals in the Jordan Survey, lying south of a line beginning in the west boundary line of said Survey 1,504.8 varas south from its northwest corner and extending east to the bank of the Big Wichita River, less 61.2 acres, more or less, covered by an oil and gas lease to Panhandle Refining Company, (d) one-fourth interest in ⅞ths of the minerals under 80 acres out of the southwest corner of an oil and gas lease, dated October 29, 1937, by Ned C. Griffin and Sadie P. Griffin to C. W. Boller (this instrument purports to cover the north 1,040 acres of the Jordan, less 100 acres in a square out of the northwest corner of said Survey), and (e) for a judicial declaration that an oil and gas lease executed by Guy Rogers and Luther Hoffman, Trustees, to C. W. Boller, dated November 1, 1937, had expired, except as to 100 acres assigned to Phillips Petroleum Company and Shell Oil Corporation, and that certain oil and gas leases executed by James H. Griffin, Mrs. Johnie P. Griffin, E. P. Griffin and Jerome S. Stone, covering a part of the oil, gas and minerals under the south half of Jordan Survey, were void.

Mrs. Mary Elizabeth Reilly answered, alleging that she was the mother of plaintiff, Mrs. Pendery; that all the property claimed by plaintiff originally belonged to Hugh Reilly, Jr., now deceased; that at the death of Hugh Reilly, Jr., she qualified as community survivor; received the estate and handled it as such survivor until plaintiff became of age. She admitted the truth of the pleadings of plaintiff, Mrs. Pendery, and adopted them in her own behalf, insofar as applicable, and asserted that the one-half interest not claimed by plaintiff belonged to her. She then pleads in cross-action against all other defendants for recovery in her own behalf and for similar relief to that sought by her daughter, Mrs. Pendery.

Charles Pettit and six others, to whom we shall refer as the Pettit group, answered, claiming title to both surface and mineral rights to 217 acres included in the original field notes of the Jordan Survey. There are 228 acres between the fence and the present river. This acreage lies east of a fence in the northern part of the Jordan Survey. Their allegations were sufficient to put in issue a boundary dispute in 1908 between E. E. Griffin, the owner of the Jordan Survey, and those claiming the E. Durain Survey. These defendants also pleaded the several statutes of limitation. This disputed boundary is referred to as the "Hamilton" fence. We shall have more to say with reference to this 228 acres, but its only significance in this controversy is another boundary line to be established in a partition agreement, all of which will become more apparent as we proceed.

Ned C. Griffin, Sadie P. Griffin, Jack Jeffus and nine other defendants (to whom we will hereinafter refer as the Ned C. Griffin group) answered with pleas of not guilty, general denial and specially that prior to 1920, Ned C. Griffin, Sadie P. Griffin, Herbert S. Griffin, Phil C. Griffin and James H. Griffin were, by virtue of the will of E. E. Griffin, deceased, the joint owners of all the mineral rights owned by said E. E. Griffin in the Floyd Jordan Survey (and under other lands not involved here) at the death of said E. E. Griffin. That on May 8, 1920, said joint owners partitioned all of said mineral rights. That Herbert S. Griffin took certain lands not involved in this suit, along with 100 acres in a square block in the northwest corner of the Jordan; the other four took jointly all mineral rights under the remainder of the Jordan Survey owned by E. E. Griffin at the time of his death. That thereafter, on May 5, 1923, said four joint owners entered into a partition deed agreement, by

the terms of which Ned C. Griffin and Sadie P. Griffin took the north half of the Jordan Survey, except 100 acres in a square in the northwest corner, owned by E. E. Griffin at the time of his death, and James H. Griffin and Phil C. Griffin took the south half thereof.

That it was the intention of the parties to so divide said lands and minerals equally, but by mutual mistake they used the terms, "the north 940 acres" and "the south 940 acres", instead of using the terms, "the north ½ and the south ½". That if plaintiff has any claim of interest in any part of the north ½ of said lands, it was acquired from James H. Griffin and Phil C. Griffin and after said lands were partitioned, with full knowledge of the contents of said partition deed and agreement; that plaintiff acquired no rights to the minerals owned by the said Ned C. Griffin and Sadie P. Griffin and their assigns. They prayed for a construction of the partition deed, in keeping with their respective contentions.

Defendants James H. and Phil C. Griffin answered plaintiff's amended petition and the cross-action of Mary Elizabeth Reilly, with pleas of not guilty and by general denials. They filed a cross-action against plaintiff and all of their co-defendants, seeking affirmative relief. The substance of their lengthy pleadings is that they, with Ned C. and Sadie P. Griffin, were the joint owners of all the mineral rights under all of the Jordan Survey owned by E. E. Griffin at his death except 100 acres in square in the northwest corner thereof, until they partitioned it on May 5, 1923; at which time they took the south half and Ned C. and Sadie P. Griffin took the north half; that during the lifetime of Herbert S. Griffin, they conveyed to him the legal title to their minerals in said south half of the Jordan Survey, with a contract that Herbert S. Griffin could lease same for oil and gas, reserving to them the usual 1/8th royalty interest; that under said contract Herbert S. Griffin leased to Panhandle Refining Company a certain part thereof; that prior to the time of drilling by the lessee, they conveyed to Jerome S. Stone an undivided 1/4th interest in their 1/8th royalty, and realizing there was an error in the description of Panhandle Refining Company's lease, the description was amended to include approximately 197 acres. That on October 20, 1925, Herbert S. Griffin died, whereupon his wife, Johnie P. Griffin, qualified as independent executrix under his will, and on May 8, 1926, the executrix attempted to make a contract with Edward Reilly and Mary Elizabeth Reilly, whereby the two last named persons should have exclusive authority to lease all minerals under the south half of the Jordan Survey, but should retain to these defendants and cross-plaintiffs a 1/8th royalty interest; that such contract was void for lack of authority to consummate it; that they filed suit in the District Court of Wichita County, in cause No. 19564–B, to recover all of said mineral rights; that a purported agreed judgment was entered in that case, but these defendants, who were plaintiffs in that cause, did not understand the facts, were deceived by the defendants as to the conduct between defendants relating to their respective interests and should not be bound by said judgment. They here seek a cancellation of the judgment in cause No. 19564–B, and that a trial be had of the issues there involved and to recover the interest awarded in that judgment to plaintiff and her mother, Mary Elizabeth Reilly, in and under the south half of the Jordan Survey, except that part heretofore assigned by these defendants to Jerome S. Stone. Other relief is sought which we think unnecessary to point out.

All other defendants answered to plaintiff's pleadings and to all cross-actions made by the respective defendants to plaintiff's suit; these answers were general and joined issues on all controverted points.

As will be observed from what we have said, this suit involves controversies, in the main, relating to the ownership of the mineral rights under the Floyd Jordan Survey in Wichita and Archer Counties. None of the defendants other than the Pettit group claimed title to any part of the surface estate.

The Jordan Survey was patented by the State upon a survey made in 1860. The Survey is in a somewhat triangular shape; the north and west lines of which are straight and intersect each other at right angles, forming the northwest corner; the third side is formed by the meanders of the Big Wichita River, down-stream being in a northeasterly direction. We attach a plat which is approximately a correct copy (but reduced in size) of one made by a surveyor who testified in the case; since the original survey was made, the river has gradually changed its location, thereby adding alluvial formations in certain places by accretions to one side or the other of

the river as it exists at this time. In the plat the solid crooked lines indicate the present location of the river, while the broken crooked lines indicate the location of the river bed at the time the survey was made in 1860.

by which Ned C. and Sadie P. Griffin took "the north 940 acres of land described as 1880 acres * * * being all of the Floyd Jordan Survey owned by the estate of E. E. Griffin, deceased, except 100 acres thereof out of the northwest corner * * *."

In 1903, E. E. Griffin purchased the Floyd Jordan Survey, in which conveyance it was described substantially as in the original field notes, that is, the southeast line was described by the meanders of the river. In 1914, E. E. Griffin died testate, leaving this and other lands to his wife and four sons. In 1920, the widow and sons partitioned the mineral rights under certain lands, by which the son, Herbert S. Griffin, took some lands not under consideration and 100 acres in a square block in the northwest corner of the Jordan and Ned C. and Sadie P., James H. and Phil C. Griffin took the remainder of the Jordan Survey owned by E. E. Griffin at his death. On May 5, 1923, the four last named entered into a partition agreement,

James H. and Phil C. Griffin took the south 940 acres described in the same language as that used in connection with the north half.

As we view the record before us, the chief question involved is the location of the boundary line between the north and south part of the Jordan Survey at the time of the partition agreement in 1923. This requires a construction of the partition deed. Incidental to such construction, the intentions of the parties are to be ascertained, as well also what did they own in virtue of their title to the survey.

It is conceded by all that over a long period of years the river has materially changed its course, as indicated by the at-

tached plat, and there have been some losses and some gains to adjacent riparian owners on both sides of the river. The changes have been slow and gradual, at least since 1860 up until about 1923, when dams and reservoirs were constructed along the channel as it then existed. This requires the application of the general rule of accretions and relictions as they affect riparian owners. 7 Tex.Jur. 138, sect. 20; 44 Tex.Jur. 96, sect. 75.

A jury trial was had, but judgment was entered on instructed verdicts relating to all but one of the various controverted phases of the case. Plaintiff, Mrs. Pendery, and Mrs. Mary Elizabeth Reilly, in her capacity as a cross-plaintiff against other defendants, excepted to the judgment entered and have perfected this appeal. James P. Griffin, Phil C. Griffin, Jerome S. Stone, Helen Stone Anderson and Helen Louise Anderson, a minor, appearing through her next friend, have also appealed from a denial of affirmative relief sought by them in cross-action against all other parties to the suit.

Judgment was entered awarding all title to the Charles Pettit group, to all lands situated between what is called the Hamilton fence and the present river containing approximately 228 acres. The fence line referred to is shown on our plat by the dotted line A–B. The uncontradicted testimony shows and the court so found that by a bona fide controversy between E. E. Griffin and Jim Tom Hamilton, as to the true boundary line between them, the indicated fence line was established between them in 1908 or 1909. This being in the lifetime of E. E. Griffin, he did not own that tract at his death, nor did his devisees own it at the time they divided their interests in 1923. No error was assigned to the instruction and judgment of the court awarding title to the Pettit group, but we are advised that all parties have, since the trial, satisfactorily adjusted their differences with respect to this tract. As before indicated by us, it only becomes material in determining the location of the dividing line of the lands partitioned in 1923.

The court decreed that the disputed boundary line between the northern and southern parts of the Jordan Survey partitioned on May 5, 1923, is one beginning at a point on the west line of the Jordan 2,304.8 varas south from its northwest corner and extends east to the bank of Big Wichita River; shown on the plat as the broken line C–D. It is the contention of plaintiff that the parties attempted only to partition the Jordan Survey as the original field notes described it, less the 100 acres owned by Herbert S. Griffin. Under this theory, of course, the 217 acres between the Hamilton fence and the old river bed would be included and would make no allowances for loss and gain by accretions, and would locate the disputed dividing line at a point beginning 1,504.8 varas south from the northwest corner of the survey and extending east to a point on the bank of the river, shown on the plat ·as the broken line E–F.

 In arriving at the intentions of parties to a written instrument, such as the partition agreement of 1923, the general rule is that we will discover, if we can, what those intentions were by the language used. If because of ambiguity, this can not be done, then resort may be had to extraneous facts and circumstances surrounding the parties at the time. It is evident that they were attempting to partition lands owned in common by them. We will not assume they were attempting to partition lands not owned by them. In the face of the instrument relating to both lots, the north and south parts, the same language is used with reference to the respective parts allotted. The acreage is referred to as 940 acres of a tract of land, described as 1880 acres, *"being all of the Floyd Jordan Survey owned by the estate of E. E. Griffin, deceased, except 100 acres thereof, out of the northwest corner, owned by Herbert S. Griffin."* (Emphasis ours.) Appellants appear to construe this language to mean that it asserts E. E. Griffin's estate owned the Jordan Survey, as described in the field notes of 1860, and the parties were attempting to partition it, less the 100 acres owned by one of the brothers; while appellees construe the language to mean that they were only attempting to partition such part of the survey as was owned by the E. E. Griffin estate. It cannot be denied that eminent attorneys have seriously differed as to the meaning of the language used, and if this be the test, the instrument to that extent is ambiguous. We are inclined to the opinion that the meaning of the language is as contended by appellees. However, it is apparent that the parties to the instrument owned the mineral rights in equal parts, and to effectuate a partition would carry with it the idea that each was to receive as much as any other, when nothing to the contrary ap-

pears. It is also the general rule that when parties attempt a partition of their joint property, absent a clear intention to the contrary, they will be presumed to have divided all and not to have left small parts and isolated portions undivided. Dawson v. Hickman, Tex.Civ.App., 95 S.W.2d 1319, writ refused.

■ Moreover, since the instrument under consideration is only a partition agreement, it means only that the parties have dissolved their common tenancy without an attempt to pass title to land. In such cases the same strict rule of evidence in connection with conveyance of title is not applicable, for indeed a partition of lands may be had by parol and if in such conditions as we find in the instant case, a controversy arises as to what was intended by the parties, parol evidence may be offered to clarify the dispute. Houston Oil Co. v. Kirkindall, 136 Tex. 103, 145 S.W.2d 1074. Two of the parties to the 1923 partition agreement testified (over appellant's objection) that it was the intention of all the parties to the instrument to divide what land they owned into two equal parts upon an acreage basis; that none of them considered that they owned any lands east of what is referred to as the Hamilton fence (line A–B on plat); so if the language used meant they only divided what they owned, the admission of the parol testimony to that effect could work no harm to appellants, since the same result would follow in both instances.

■ It is apparent from the record that at the date of the partition agreement the parties owned an area adjacent to the lands covered by the original field notes of the Jordan, occasioned by the slow and gradual change in the river channel. From the attached plat it would appear that more acreage accrued to what was originally the south half of the Jordan Survey than to the north half. Tracts designated on the plat as 1, 2, 3 and 4 had been gained, while 5, 6 and 7 had been lost. It appears from the record that practically all material changes in the course of the channel had taken place subsequent to the original survey made in 1860 and prior to 1923, when the retaining dams and reservoirs were constructed on the river. Two witnesses who had known the premises for approximately 50 years testified to this effect; no one asserted the contrary. One of the witnesses who was a tenant on the Jordan land in 1908 said E. E.

Griffin told him, at the time of the controversy about the Hamilton fence boundary line, that he only owned to that fence and claimed nothing beyond. Mr. Corlett, the surveyor who had surveyed in that area for many years, said since the dams and reservoirs were constructed in 1923, there had been very little change in the location of the channel and that it is now approximately where it was then. It follows that as riparian owners, the four Griffin heirs who were parties to the partition agreement also owned at that time the accreted lands; and under the rule above announced they will be presumed to have divided their entire holdings under the ancestor's will. The accreted lands were as much a part of the original grant under the patent to the Jordan Survey as was the area described therein. Property rights thus acquired become vested as effectively as if included in the original grant, and even legislative authority cannot take it away. This rule is definitely settled in an able and exhaustive opinion of our Supreme Court, written by the late Chief Justice Cureton. Manry v. Robison, 122 Tex. 213, 56 S.W.2d 438, 444.

■ Surveyor Corlett, who made from a survey on the ground the large plat from which the one attached was made in reduced form by us, testified that omitting from consideration 217 acres east of the Hamilton fence and the 100 acres in the northwest corner owned by Herbert S. Griffin, and considering all losses and gains by accretion to the Jordan Survey in 1923, the true line dividing the acreage equally between the parties to the partition agreement would be located by beginning at a point on the west boundary line 2,304.8 varas south from the northwest corner of the survey and extending the line east to the banks of the river as it then existed. This line is shown on our plat as C–D. The trial court instructed the jury to return a verdict to this effect and judgment was entered accordingly. Appellant Mrs. Pendery and cross-plaintiff Mrs. Mary Elizabeth Reilly have complained in points 7, 7A, 7B, 8, 10, 12 and 13 of the actions of the court concerning the issues above mentioned. Point No. 7 challenges the instruction and judgment that the Ned C. Griffin group had title to the mineral rights under that part of the Jordan Survey lying north of what we shall call the 2,304.8 dividing line shown on the plat as line C–D, except 100 acres in the northwest corner. We have concluded that the court correctly determined the

location of this line, and that the point raised presents no error. Point 13 challenges the admission in evidence of parol testimony by Ned C. Griffin as to the intentions of the parties when they partitioned the mineral rights in 1923. Based upon the rules above announced, we think the testimony was admissible. For the reasons stated, we overrule all the above numbered points.

Prior to 1925, Hugh Reilly, Jr., had acquired the surface title to the Jordan Survey and some time in that year was killed, perhaps over a dispute concerning some interests he was supposed to have acquired. Mary Margaret Reilly was his only child, and Mary Elizabeth Reilly was his wife. Mrs. Reilly qualified as community administratrix and in that capacity administered the community estate, until Mary Margaret became of age. Shortly after the death of Reilly, Herbert S. Griffin was killed, the record indicating that his death resulted from the same controversy. Johnie P. Griffin qualified as independent executrix under his will, and subsequently acted in that fiduciary capacity. Mary Elizabeth Reilly, individually and as next friend for her child, Mary Margaret Reilly (now Mrs. Pendery), sued the estate of Herbert S. Griffin for the wrongful death of her husband, Hugh Reilly, Jr. While that suit was pending, James H. Griffin and Phil C. Griffin filed suit in the District Court of Wichita County in cause No. 19564–B, against Panhandle Refining Company, Mary Elizabeth Reilly, individually and as community administratrix of the estate of Hugh Reilly, Jr., deceased, Mary Margaret Reilly (the child), Mrs Johnie P. Griffin, individually and as independent executrix, Ephraim P. Griffin (her son) and Jerome S. Stone, seeking to recover from the named defendants (except Jerome S. Stone) the mineral rights under all of the "South 940 acres of that certain 1880 acre tract (in Wichita and Archer Counties), said 1880 acres being all of the Floyd Jordan Survey formerly owned by the estate of E. E. Griffin, deceased, except 100 acres of said survey out of the northwest corner * * *." As against Jerome S. Stone they alleged that on October 11, 1926, they executed a transfer to said Stone of an undivided 1/4th interest in the royalty in the oil and gas lease held by Panhandle Refining Company. They prayed for recovery as pleaded. All parties appeared and answered; some defendants filed cross-actions against others.

An agreed judgment was entered in the case, the nature of which will be discussed presently. Plaintiffs in that case are defendants and cross-plaintiffs in the instant suit. They seek by their cross-action here to set aside the agreed judgment entered in cause No. 19564–B on September 23, 1927. The trial court is this case declined to give them the relief sought and from that part of the judgment they have appealed. Error is assigned in five points to the action of the court in declining to set aside the judgment in cause No. 19564–B.

■ The statutes of limitation were interposed against the attack made on the judgment and without detailing the voluminous pleadings and evidence offered, we hold that no error is shown by the refusal of the court to reopen that judgment nearly thirteen years after its entry. We are supported in this holding by such authorities as Hamilton v. Blackburn, 43 Tex.Civ. App. 153, 95 S.W. 1094, 1099, followed many times by subsequent courts and cited with approval by Commission of Appeals in Garza v. Kenedy, 299 S.W. 231, 234.

■ Before pursuing the effect of the court's ruling on the judgment in cause No. 19564–B farther, we deem it expedient first to notice the sixth point presented by cross-plaintiffs James H. and Phil C. Griffin, urged for a reversal of one part of the judgment entered. This point reads: "The lower court erred in directing a verdict in favor of Luther Hoffman and Joe Carrigan and the Shell Oil Company and the Phillips Petroleum Company, with respect to the claim asserted against them by Phil C. and James Griffin by reason of the transaction whereby and whereunder Luther Hoffman, as a trustee representing the cross-plaintiff James Griffin, as a result of his handling of trust property and profiting personally * * *."

The record does not support the point raised, in that no "directed" verdict on the question was returned by the jury as contended by the complaining parties. But on the contrary, the judgment shows that after the parties had presented to the court their respective contentions, court asked if either side had any issue it desired to have submitted to the jury, and each side said they had none. No instruction or issue of any kind was submitted by the court and he thereupon stated in the judgment that in that event he would hold that cross-plaintiffs take nothing against all or either of the

named defendants. Much could be said upon the subject if the matter was properly before us, but we do not feel impelled to speculate upon the divers and sundry issues that might have arisen if it was before us. Because the record does not support the point made, it must be overruled.

We now advert to the judgment in cause No. 19564–B. The trial court in the instant case found that judgment to be valid and binding, it fixed and established the validity of the Panhandle Refining Company lease, and all parties were denied any relief against it; that the interest awarded to Mary Elizabeth Reilly in her designated capacity was community property of herself and deceased husband, Hugh Reilly, Jr., and that Panhandle Refining Company should pay to her in her capacity as community administratrix the sum of $2,500. That the royalty under the Panhandle lease belonged jointly to James H. Griffin, Phil C. Griffin and Jerome S. Stone. That all other mineral rights except those under the Panhandle Refining Company lease in the said south 940 acres of the Jordan Survey belonged one-half to Mary Elizabeth Reilly as community administratrix and one-half to James H. and Phil C. Griffin.

It appears that because of the previous personal difficulties between Hugh Reilly, Jr. and the Griffins, it was deemed inadvisable for their survivors to deal with each other in matters of subsequent leases in which they were jointly interested, and to avoid such, the agreed judgment in cause No. 19564–B was entered, by which their respective attorneys, Luther Hoffman, attorney for Mrs. Reilly, and Guy Rogers, attorney for the Griffins, were named as "Trustees", fully empowered to execute leases on any part of the south 940 acres of the Jordan Survey, except that contained in the Panhandle holding; the royalties under such leases to be reserved to those shown by the judgment to own the mineral rights. But provisions were made that either or all of said owners could revoke such trust by a written instrument to that effect placed of record in Wichita County. That if Hoffman should cease to so act, Mrs. Reilly could appoint a substitute and if Rogers should cease to act, the Griffins could appoint a substitute to so act. In 1937, Hoffman and Rogers did lease said lands for oil and gas development to C. W. Boller, which lease provided for certain conditions, somewhat different to provisions of the usual and customary standard forms. During the months of October and November, 1937, the Griffins and Stone, part owners of the mineral rights under the judgment in cause No. 19564–B, executed to Boller their several leases containing conditions and provisions different from those in the Hoffman-Rogers lease. Appellants here sought a cancellation of the leases from the part owners, upon the theory that the exclusive right of leasing was conferred by the judgment on the so-called trustees; they requested an instruction by the court to this effect, and it was refused. They assign error to the refusal and present the matter by their first and second points.

■ Appellants contend that the attempted leases made by some of the owners constituted an interference of the handling of the property by the trustees and tended to defeat the purposes of the trust; they therefore asked that such leases be declared void. We are not in accord with this contention. A correct understanding of the judgment referred to reveals that no real trust was created, but only a type of limited agency. See 2 C.J.S., Agency, 1034, § 2 k; 42 Tex.Jur. 611, sect. 10. It is the settled rule that a consent or agreed judgment has, in all respects involved here, the same effect as a contract. Beam v. Southwestern Bell Tel. Co., Tex.Civ.App., 164 S.W.2d 412, writ refused, want of merit. The rule of construction applicable here is the same as if the parties to the judgment had *contracted* under the same terms as those in the judgment; this means that in this case, the relationship of the persons named as "Trustees" will be considered just as their authority is specifically given, rather than as trustees as designated by the judgment. State Nat'l Bank of Corpus Christi v. Morgan, 135 Tex. 509, 143 S.W.2d 757. The judgment did not vest title in Hoffman and Rogers, but in Mrs. Reilly in her fiduciary capacity and in the Griffins. It is our opinion that the most that can be said of the authority vested in Hoffman and Rogers is that they were authorized to execute leases and to collect the proceeds therefrom in such manner as they might have done under a power of attorney. As stated, the judgment expressly reserved to each of the owners the right to revoke the authority given to the named trustees. Nor did the judgment restrict the right of alienation by the owners of their rights under the

judgment. The judgment did not by express terms provide that the trustees should continue to act for any given period of time, nor that they could execute leases for subsequent owners under those to whom the property was awarded by the judgment. However, none of the parties appears to question the power and authority of Hoffman and Rogers to execute the lease to Boller at the time and under the terms contained therein, although Phil C. Griffin had previously transferred his interest to another. It is suggested by Geier Brothers, Inc., in its briefs, that the pleadings in cause No. 19564–B did not contain a request for the appointment of trustees, and that the judgment must be supported by pleadings before its validity can be sustained. It is evident, however, that Geier Brothers, Inc., claims the leasehold on 300 acres under transfer from Boller, dated November 5, 1937, and that Boller held under lease from the so-called trustees, dated November 1, 1937, and also from James H. Griffin under date of October 20, 1937, and from Jerome S. Stone, dated November 6, 1937, and from Johnie P. Griffin and E. P. Griffin, of date November 13, 1937. The only interest in the one-half awarded by the judgment to Mary Elizabeth Reilly, in the capacity stated, ever acquired by Geier Brothers, Inc., came through Hoffman and Rogers, and Geier Brothers, Inc., cannot now, with consistency, claim that Hoffman and Rogers had no authority to execute the lease to its assignor, C. W. Boller.

Any conveyance or lease executed by the owners of the mineral interests, insofar as would not defeat the trust (if it could be called such), should be upheld. Monday v. Vance, 92 Tex. 428, 49 S.W. 516. This for the reason greater rights may be granted by the owners than were contained in that by the so-called trustees, or even reversionary rights may change ownership by virtue, of instruments executed by the owners. Hoffman resigned in 1938, and was accepted by Mrs. Reilly, one of the owners for whom he was appointed to act. The other trustees resigned in 1942. None of the owners has attempted to appoint successor trustees, as provided by the judgment. Appellants had no authority under the judgment to require the Griffin interests to appoint a substitute trustee. From what we have said, we consider that if Boller acquired rights under the leases from Stone and the Griffins different from those acquired from the trustees, he and his assigns are entitled to assert them, especially since the so-called trust has been ended because of the resignations mentioned. The doctrine of after acquired title is applicable in relation to Stone and the Griffins, and appellants are in no position now to complain, if they could have done so at any time. Certainly such rights as passed by the leases from Stone and the Griffins did not affect the rights awarded to appellants by the judgment. For the reasons stated, we overrule first and second points.

Appellants' third point charges error of the trial court in holding that the lease made by Hoffman and Rogers, as trustees, on November 1, 1937, to C. W. Boller had not expired as to the 300 acres assigned by Boller to Geier Brothers, Inc.

The lease referred to purported to cover the mineral interests in the south half of the Jordan Survey, awarded to Mary Elizabeth Reilly, community administratrix, and James H. and Phil C. Griffin. It did not contain terms usually referred to as the "unless" and "rental payment" clauses. Nor did the original instrument contain a primary term clause, but the latter was subsequently provided by mutual agreement of the parties. Among the many provisions contained in the lease, we think, for the purposes of the point before us, the following references to paragraphs therein are sufficient:

4. Lease to expire unless a well is begun on or before April 28, 1938, either on the leased premises or within 500 feet of any boundary line, and drilling prosecuted with reasonable diligence.

5. If the initial well be drilled off the premises and proves to be a producer in paying quantities, then a well must be begun on the leased premises and prosecuted with reasonable diligence, within six months after completion of the initial well.

6. By the term "paying quantities" is meant that a well 2,000 feet or less in depth shall produce 50 barrels per day during a 15 successive day test, and that a well 2,000 feet or over shall produce 100 barrels of oil per day during a 15 successive day test.

7. If the well produces less than 50 barrels per day during a 15 successive day test, the lessee may have the privilege of saving the well, and if he does save it, he shall retain a lease of 100 acres around the

well so long as oil is produced and marketed therefrom.

8. If a well more than 2,000 feet in depth produces more than 50 barrels a day during such a test, but less than 100 barrels, the lessee shall have the privilege of saving the well and retaining a lease on 100 acres around the well so long as oil is produced and marketed therefrom.

9. If a well is drilled on the premises to more than 2,000 feet in depth and produces 100 barrels or more per day during such a test, the lease shall be validated over the entire tract so long as oil is produced in paying quantities therefrom.

11. "Should the first well drilled on the above described land be non-productive of oil and/or gas in paying quantities, then, and in that event, if a second well is not commenced on said land within six months thereafter, this lease shall terminate as to all parties."

After Hoffman and Rogers executed to Boller the lease of date November 1, 1937, and holding leases to the same land from James H. Griffin, Johnie P. Griffin, E. P. Griffin and Jerome S. Stone, who owned one-half of the mineral rights under the lands covered, Boller assigned to Joe B. Carrigan, and Carrigan assigned to Phillips Petroleum Company, and the last named company assigned a one-half interest to Shell Oil Company, 100 acres being a tract 430 varas wide north and south, the north line of which is common with the dividing line in the partition contract between the Griffin heirs in 1923, as located by the court, at our line C–D.

Phillips Petroleum Company and Shell Oil Company drilled a well more than 2,000 feet in depth on that 100 acre tract, which produced more than 50 barrels of oil per day and less than 100 barrels, under the 15 consecutive day test provided in the original lease. The court awarded to the Phillips and Shell Companies the leasehold right to that 100 acres, and appellants assign error thereto under their point 6.

On November 5, 1937, C. W. Boller, the holder of the leasehold rights above pointed out, assigned to Geier Brothers, Inc., and Jackson a lease on the south 300 acres of the Jordan Survey. No well has ever been drilled on the south 300 acres so assigned to Geier Brothers, Inc., and Jackson. They did drill a well on adjacent land and within 500 feet of a boundary line of the 300 acres, but it was non-productive. As above indicated, the only producing well ever drilled on the Boller leases referred to here was the one by the Phillips and Shell Companies on the 100 acres in the north part of the lease. Under the provisions of the lease to Boller, that well only permitted him and his assigns to hold 100 acres adjacent to it. Geier Brothers, Inc., contends that the drilling of a producing well on the Phillips and Shell lease kept alive the entire lease so long as that well produced oil in paying quantities. The ninth paragraph of the Boller lease above referred to does not support this contention. It will be observed that to preserve the entire lease a well must be drilled more than 2,000 feet in depth and produce 100 barrels or more per day upon the test prescribed. Geier Brothers, Inc., also argues that since the well drilled by it off the premises was dry, the lease contract did not require the drilling of a second well; this contention cannot be sustained, under paragraph 11 above nor by any other provision of the lease.

The lease must be considered as a whole, giving effect to each and every provision, if it can be done. With this rule in mind, we conclude that since the Phillips and Shell well was more than 2,000 feet deep and produced over 50 barrels and less than 100 barrels of oil per day, only 100 acres of the lease could be held by the lessee. Under paragraph 11, it was encumbent upon the lessee to begin the drilling of a second well on the premises within six months after completion of the dry hole on adjacent land within 500 feet of a boundary line of the lease, in order to keep the lease alive. There was error in holding that the Boller lease to Geier Brothers, Inc., on the south 300 acres had not expired, which will require a reformation of the judgment in that respect.

Point 6, mentioned above, asserts error because the court instructed the jury that Phillips and Shell Companies had a valid leasehold on the 100 acres tract based on the leases from Stone and the Griffins to C. W. Boller, because, it is contended, that those leases were void when they were executed, being in violation of the exclusive right to lease given to the two persons called trustees in the judgment in cause No. 19564–B. As a matter of fact, Boller held a lease from the so-called trustees, as well as from Stone and the Griffins. We have held that the Stone and Griffin leases were not void on account of being in con-

flict with the lease by Hoffman and Rogers. We further hold that the Hoffman and Rogers lease to Boller (under whom Phillips and Shell held) was effective and that the drilling of the producing well by Phillips and Shell Companies entitled them to hold the 100 acres around the well. We also conclude that the additional rights, if any, acquired by Boller under the leases from Stone and the Griffins, which were not conferred by the lease from Hoffman and Rogers, passed to Phillips and Shell, as assignees of Boller. The appellants do not assert, under this assignment, that the lease from Hoffman and Rogers to Boller was not valid and effective as to the 100 acres on which the producing well is situated. In their briefs they admit its validity. Appellants claim, however, that even though the lease is valid as to the 100 acres on account of the Hoffman and Rogers lease, the lessee has no right to claim under that lease and those by Stone and the Griffins also. It occurs to us that appellants could not complain of leases by Stone and the Griffins which could in no way affect them. Much of what we have said relative to points 1 and 2 is applicable to the sixth point. It is therefore overruled.

Point 4 asserts error in the rendition of judgment in favor of Geier Brothers, Inc., on the strength of an assignment from Boller, under date of February 19, 1942, covering the south 300 acres of the Jordan Survey. The judgment does not support this contention. No reference is made in the judgment to an assignment to Geier Brothers, Inc., from Boller, as of the date complained of. Boller apparently claimed under the lease from Hoffman and Rogers, as well also leases covering a half interest from Stone and the Griffins. He assigned the lease to Geier Brothers, Inc., and F. B. Jackson, and later Jackson conveyed to Geier Brothers, Inc. The point must be overruled.

There is no merit in point 4A. There, error is charged in awarding to Geier Brothers, Inc., a leasehold interest in the south 300 acres of the Jordan Survey, because the description is insufficient to point out the land covered. In view of the shape of the Jordan Survey, we believe the designation of the south 300 acres thereof, as was done in the judgment, no difficulty will be encountered in locating the land referred to.

■ Points 9 and 10 assign error for failure of the trial court to award to appellants a mineral right in an 80 acre tract, in which Jerome S. Stone held a leasehold right under C. W. Boller. This tract is in a square block in the southwest corner of what we are treating as the north half of the Jordan, as partitioned in 1923, and adjacent to the line designated by the court as the true boundary line between the north and south halves. Boller acquired this lease from Ned C. and Sadie P. Griffin, who took it under the partition agreement of 1923. We find in the record no right in either of the appellants to any mineral interests in land north of that line. The points raised must be overruled.

■ Fourteenth point complains of the admission by the court of parol testimony to contradict the terms of the judgment in cause No. 19564-B, wherein Panhandle Refining Company was awarded a leasehold interest in the tract therein described. As we construe the testimony complained of, it did not contradict the provisions of the judgment, but merely explained them, as an aid to the location of the tract covered. In this connection, we are again confronted with the highly controverted issue between the parties as to the location of the true boundary line between the north and south halves of the Jordan Survey at the time of the 1923 partition. The location of that line, along with the application of the rule involved in accreted lands, must control the question before us.

The judgment in cause No. 19564-B awarded to Panhandle Refining Company a leasehold right to 100 acres, more or less, out of the Jordan Survey, lying across the river from Block No. 6, of the Spiller Survey. (Block No. 6 of the Spiller is indicated on the attached plat.) The description continues, substantially, by beginning at the southeast corner of the north 1040 acres of the Jordan; thence "east, south and west" with the meanders of the river to where the same would intersect with a straight line run from the southwest corner of said Block 6 of the Spiller to the southeast corner of the north 1,040 acres of the Jordan; thence with that straight line to the place of beginning. Appellants contend that the southeast corner of the north 1,040 acres of the Jordan is at the point F on our plat; assuming they are correct (which we are not inclined to do), to follow the description given in the judgment, "thence east, south and west following the meanders of the river", etc., would not include any part of the Jordan, for the simple

779

reason the first call carries us in the opposite direction from the Jordan Survey and there are no meanders of the river which approximate the calls made. It is contended by appellants that the southwest corner of Block 6 of the Spiller is at point G on our plat and that a line drawn from that point to what they contend is the southeast corner of the north 1,040 acres of the Jordan would be our dotted line G–F. It will be observed that the description so made in the judgment is an error, if appellants are correct in their contentions as to the location of the southeast corner of the north 1,040 acres of the Jordan.

The parol testimony as to the location of the Panhandle lease complained of is in substance that when the Griffins conveyed to Jerome S. Stone an interest in the royalty under the Panhandle lease, they discovered the mistake in description and corrected it, substantially as the judgment in this case described it. The undisputed testimony shows that Jerome S. Stone acquired the royalty under the Panhandle lease and assigned it to the estate of J. W. Stone, deceased, of which estate Mrs. Helen Stone Anderson is the trustee.

The judgment in this case awarded to Panhandle Refining Company a leasehold right to a tract of land described substantially as follows: Beginning at a point on the south or west bank of the Big Wichita River which point is 2,294.4 varas south and 1,363.9 varas east of the northwest corner of the Floyd Jordan Survey (this beginning corner would be at point D on our plat); thence south 952.4 varas to corner on north or westerly bank of the Big Wichita River (this point would be at H on our plat and would be across the river from what was at that time the southwest corner of Block No. 6 of the Spiller; the changed channel of the river as indicated would place that corner at a point on the east bank of the river at I instead of at G); thence down the river with its meanders to the place of beginning (point D on our plat).

No one complains here of the description of the tract awarded to Panhandle Refining Company, as above described. Judgment in cause No. 19564–B awarded the royalty under the Panhandle lease to James H. and Phil C. Griffin and Jerome S. Stone. Helen Stone Anderson, as trustee of the estate of J. W. Stone, deceased, acquired it from the owners and we fail to see how appellants have any interest whatever in that royalty, unless it could be said that Panhandle was awarded more land in its lease by the present judgment than it was entitled to under judgment in cause No. 19564–B. We do not think this construction should be placed on the present judgment, in view of the two descriptions above pointed out.

As shown in the early part of this opinion, the channel of the river underwent slow and gradual changes up until about the year dams and reservoirs were constructed on it, which was prior to the dates of the leases, assignments and judgments here involved. Because of this situation, although the southwest corner of Block No. 6 of the Spiller was formerly at a stake on the south bank of the river, at point G on our plat, yet since the line from the southeast corner to that point called for a course west to the river bank, it has been thus moved to point I on the plat by virtue of the rule so ably discussed in Schnackenberg v. State, Tex.Civ.App., 229 S.W. 934. To the same effect is the holding in Port Aransas Properties, Inc., v. Ellis, Tex.Civ. App., 129 S.W.2d 699, error dismissed, want of merit. A similar rule was announced by this court in Pritchard v. Burnsides, Tex.Civ.App., 158 S.W.2d 586, affirmed by Supreme Court, 167 S.W.2d 159 (not yet published [in State reports]). We see no reversible error in the admission of parol testimony to enable the court to confirm the undisputed lease of the Panhandle Refining Company, and which also had the effect of describing the tract under which Mrs. Stone, individually and as trustee, was to be awarded the royalty.

Appellants' point 11 complains because the costs were awarded against them. Without a recapitulation of much that we have said, we observe that there was no real controversy between the parties about the surface rights, and the trial court found against appellants on their several claims for mineral rights, and as we view it, costs were properly charged against appellants. In any event, no abuse of discretion by the trial court appears and under Rule 141, Rules Civil Procedure, the matter was within the sound discretion of the court. The point is overruled.

We have not discussed the points raised in the order presented, because we deemed it advisable first to determine whether there was error in the location by the court of the dividing line under the partition of

780

1923. As indicated, we overrule all points raised except point three. We believe the lease by Hoffman and Rogers, acting as trustees under the judgment in cause No. 19564–B, to Boller had expired at the time of trial on the south 300 acres assigned by Boller to Geier Brothers, Inc. The validity of the leases taken by Boller during October and November, 1937, from the owners of one-half of the mineral rights is not attacked by appellants. They had no interest in the interest attempted to be leased to Boller and by Boller to Geier Brothers, Inc.

We therefore reform the judgment entered by the trial court by awarding to Geier Brothers, Inc., an undivided one-half interest in a leasehold interest to the south 300 acres of the Jordan Survey, and award the remaining one-half interest therein to appellants. In all other respects the judgment is left undisturbed and as reformed will be affirmed.

Because of the recovery by this appeal of the interest in the south 300 acres by appellants, as against Geier Brothers, Inc., and considering the amount of that recovery as compared to the many issues and points determined by us against appellants, ten per cent of the costs of this appeal will be taxed against Geier Brothers, Inc., and nine-tenths against the appellants. Rule 448, Rules Civil Procedure. It is so ordered.