HELEN PRITCHARD ET AL V. W. T. BURNSIDE ET AL.

No. 7975. Decided January 6, 1943.
(167 S. W., 2d Series, 159.)

*W. T. Williams, W. T. Williams, Jr.,* and *Sterling Williams,* all of Austin, *Angus Wynne* and *Harrington & Harrington,* of Longview, for petitioners.

The Court of Civil Appeals erred in holding that there was no evidence to support the verdict of the jury finding that the owners of the land placed the southeast corner of block 3 on the north bank of the Sabine River 2 degrees and 18 minutes west from the southwest corner of the Rains survey. Beck v. Gulf Oil Co., 113 S. W. (2d) 258; Blackwell v. Coleman Co., 94 Texas 216, 220, 59 S. W. 530; Davis v. George, 104 Texas 106, 134 S. W. 208.

*Thompson, Mitchell, Thompson & Young,* of St. Louis, Mo., *Lacey & Price,* of Longview, *Palmer Bradley, P. G. McElwee, W. B. Wagner, J. P. Adoue, Barksdale Stevens, A. E. Groff* and *R. H. Whilden,* all of Houston and *Dan Moody,* of Austin, for respondents.

*W. Edward Lee,* of Tyler, filed brief as amicus curiae.

MR. PRESIDING JUDGE SMEDLEY, delivered the opinion of the Commission of Appeals, Section B.

This is a boundary suit, in which petitioners Helen Pritchard and I. F. Pritchard and their lessee seek to recover from respondents W. T. Burnside and Ethel Burnside, their lessee and others, the title and possession of a tract of land containing 7.85 acres in the Francis W. Johnson survey in Gregg County, and the value of oil taken by respondents from three wells drilled or caused to be drilled by them on the land.

After trial before a jury in which two special issues as to the boundary line between Blocks 3 and 4 of the Johnson survey were answered favorably to petitioners, the trial court sustained respondents' motion for judgment notwithstanding the verdict, and rendered judgment that petitioners take nothing by their suit. The Court of Civil Appeals affirmed the judgment of the trial court, holding that as a matter of law the tract of land in controversy is within the bounds of respondents' land and is not part of the land owned by petitioners. 158 S. W. (2d) 586.

Writ of error was granted on an assignment presenting the contention that the Court of Civil Appeals erred in holding

that there is no evidence to support the jury's finding that the parties to a partition deed executed in May, 1914, intended the southeast corner of Block No. 3 described in the deed to be at a point on the north bank of the Sabine River south 2° 18' west from the southwest corner of the G. R. Rains survey. We are thoroughly convinced, however, after carefully reading the statement of facts, that there is no competent evidence in the record to support the jury's finding with respect to the intention of the parties to the deed; and we have reached the conclusion that the thorough and able opinion of Chief Justice McDonald, which sustains the contention of respondents as to the location of the line between Blocks 3 and 4, correctly decides the question of boundary as one of law.

The Francis W. Johnson survey, containing about 4,068 acres, patented in 1873 and lying between the Wm. Tyndale, George R. Rains and other surveys on the north and the Sabine River on the south, was jointly owned in the year 1912 by James Moore, I. F. Pritchard, C. F. Burnside and others. The owners agreed that Moore should make a survey of the land into nine tracts as nearly equal in value as he could determine, that nine separate deeds describing the tracts or shares by metes and bounds should be executed, and the land thus partitioned among the owners. A map was prepared showing the division of the land into blocks numbered from one to nine, inclusive, the course of the river along the south boundary of the Johnson survey, the length of the lines and the acreage of the several blocks and the adjoinder of many corners of the survey and of its blocks with lines and corners of surveys to the north and east.

To accomplish the partition, deeds conveying the several blocks were executed and delivered about June 1, 1914. Block No. 3 was conveyed to C. F. Burnside, the deed containing the following description:

"All that certain tract or parcel of land situated in Gregg County, Texas, on the H. R. Survey of Francis W. Johnson, being known as BLOCK NO. THREE (3) as divided and mapped by said parties interested, and more fully described as follows, to-wit:

"BEGINNING at the Southeast corner of Block No. Two (2) a stake on the North bank of the Sabine River;

"Thence North 1850 varas to a corner;

"Thence East 1440 varas to a corner;

"Thence South 1090 varas to a corner, on the north bank of said river;

"Thence Southwest along the bank of said river, to the place of beginning, containing 420 acres of land, more or less."

Block No. 4 was conveyed to Ingram F. Pritchard and was thus described in the deed:

"All that certain tract or parcel of land situated in Gregg County, Texas, on the Francis W. Johnson Headright Survey being known as block No. Four (4) as divided and mapped by said parties interested and more fully described as follows, to-wit:

"BEGINNING at the southeast corner of Block No. three (3) on the North bank of Sabine River;

"THENCE N 550 vrs to a corner;

"THENCE East 950 vrs to a corner;

"THENCE N 950 vrs to a corner;

"THENCE E 480 vrs to a corner near the Texas & Pacific Railway;

"THENCE S 1100 vrs to a corner;

"THENCE West 210 vrs;

"THENCE South 1300 vrs to the N bank of said river at a corner;

"THENCE West along the bank of said river to the place of beginning, containing 420 acres of land more or less."

The uncontradicted testimony of W. E. Jones, a surveyor, is as follows: He was employed to assist James Moore in making calculations to divide into blocks the land jointly owned, and he helped Moore prepare the map referred to in the partition deeds. The blocks were not surveyed on the ground, but the description of them were calculated or prepared from the field notes of the Francis Johnson survey and the description contained in a deed or deeds conveying that survey. The Sabine River was platted on the map, not from a survey on the ground,

but in accordance with the meander calls in the field notes of the Johnson survey.

The witness Knox testified, without contradiction, that he drew for James Moore the deeds by which the land was partitioned, including the deeds to Blocks 3 and 4; that Moore furnished him the field notes, that is, the descriptions for the several blocks, and the map to be used in preparing the deeds; that the original map given him by Moore and identified by Moore's handwriting was before him as he drew the deeds, and when he wrote the field notes into the deeds he traced them on, and compared them with, the map.

It was proven by the testimony of Jones and the other surveyors who testified on the trial that the great bend in the Sabine River to the north is in fact farther west, in its relation to the southwest corner of the G. R. Rains survey, than it is shown to be by the meander calls in the field notes and patent of the Johnson survey and on the map used in making the partition. A line run south from the southwest corner of the Rains survey misses the great bend and reaches the river at a point 1198 (or 1150) varas south of the Rains corner. A line run south 2° 18' west from the southwest corner of the Rains survey strikes the east part of the bend of the river at a point 691.8 varas from the Rains corner. The area between these two lines, as is well illustrated by the sketch in the opinion of the Court of Civil Appeals, 158 S. W. (2d) 586, 588) is the subject matter of the controversy. This area is thus described in the petition and in the trial court's judgment:

"BEGINNING at a point on the ground, now recognized as being the most Southerly Southwest corner of the George R. Rains Survey No. 350, (describing bearing trees) ;

"THENCE South 2° 18' West 700 varas, more or less, to a point on the North bank of the Sabine River;

"THENCE down said River with its meanders to a point due South of the place of beginning;

"THENCE North to the place of beginning."

Petitioners, who hold under the conveyance of Block No. 4, to Ingram F. Pritchard, claim the area in controversy as a part of Block No. 4, while respondents, holding under the conveyance of Block No. 3 to C. F. Burnside, claim it as a part of Block No. 3.

The first contention made by petitioners is that, as a matter of law, the boundary line between Block No. 3 and Block No. 4 is a line beginning 27.77 varas west from the re-entrant corner of the Rains survey and running thence south to the Sabine River. This is a course and distance construction, being the result of an addition of the distances along the north lines of Blocks 1, 2 and 3 as they appear in the partition deeds and on the Moore map. The total thus obtained is 3920 varas. The surveyors testified that the distance from west to east on the ground between the northwest corner of Block No. 1 and the re-entrant corner of the Rains survey is 3947.8 varas, which is 27.8 varas (practically 27.77 varas) greater than the total of the lengths of the north lines of the three blocks as given in the deeds of partition and as marked on the map. When the east line of Block No. 3 is constructed by course and distance from the northwest corner of Block No. 1, the southeast corner of Block No. 3 on the north bank of the river is, according to the surveyors' testimony, south 2° 18′ west from the southwest corner of the Rains survey.

The fault in this theory of construction is that it disregards the intention of the parties, as evidenced by the deeds affecting the partition, that the northeast corner of Block No. 3 shall coincide with the re-entrant corner of the Rains survey and that the east line of Block No. 3 shall adjoin the line of the Rains survey that runs south from its re-entrant corner.

■ The argument made proceeds from the assumption that there is no call for adjoinder and would stop the north line of Block No. 3 at the called distance. The deed conveying Block No. 3 to Burnside does not in its metes and bounds call for a line or corner of the Rains survey. It particularly describes the north line of the block thus: "Thence (from the northwest corner) east 1440 varas to a corner." But, the first part of the description in the deed contains the following: "Being known as Block No. 3 as divided and mapped by said parties interested." This, the evidence conclusively proves, is a reference to the Moore map. On that map the northeast corner of Block No. 3 is at the re-entrant corner of the Rains survey and the east line of Block No. 3 is, as far as the southwest corner of the Rains survey, a common line with the Rains line. The reference in the deed to the Moore map makes the map a part of the description in the deed and the map thus gives to the deed a call which is in legal effect a call for ad-

joinder with the Rains corner and line. Lewis v. East Texas Finance Co., 136 Texas 149, 153-154, 146 S. W. (2d) 977; Cragin v. Powell, 128 U. S. 691, 32 L. Ed. 566, 567-568.

■ There is no controversy as to the true location of the re-entrant corner or of the southwest corner of the Rains survey.. The surveyors who testified are in agreement as to those corners. There is no evidence in the record that the location of the re-entrant corner of the Rains survey was uncertain or that it was unknown to Moore or to any of the parties to the deeds when the land was partitioned. The call for adjoindsr must be given controlling effect over the call for distance, there being no evidence, other than the not unreasonable excess in distance, tending to prove that the call for adjoinder was made through mistake or by conjecture. Camp v. Gulf Production Co., 122 Texas 383, 404, 61 S. W. (2d) 773; Stanolind Oil & Gas Co. v. State of Texas, 129 Texas 547, 560, 101 S. W. (2d) 801, 104 S. W. (2d) 1; State of Texas v. Sullivan, 127 Texas 525, 532, 534, 92 S. W. (2d) 228. We conclude, therefore, that the northeast corner of Block No. 3 is at the re-entrant corner of the Rains survey and that the east line of Block No. 3, coincides, as far as the southwest corner of the Rains survey, with the line of the Rains survey that runs south from its re-entrant corner.

Petitioners make, in the alternative, the contention that the northeast corner of Block No. 3 is at a point 43 varas west of the re-entrant corner of the Rains survey. The basis of this contention is the fact that, while the length of the north line of Block 3 as described in the deed and as shown on the Moore map is 1440 varas, the surveyors found the distance on the ground between the northwest corner of Block No. 3 and the re-entrant corner of the Rains survey to be 1483 varas, an excess of 43 varas. What has been said in discussing the first contention applies also here. The call for distance will yield to the call for adjoinder.

The field notes in the deed conveying Block No. 3 describes its east line as running from its northeast corner south 1090 varas to a corner on the north bank of the river, and the field notes in the deed conveying Block No. 4 describe the block as beginning at the southeast corner of Block No. 3 on the north bank of the river and thence north 550 varas to a corner. The Moore map shows the river to be the south boundary of -Block No. 3 as well as of Block No. 4 and the southern terminus

of the line between the two blocks to be on the north bank of the river. Thus the river is made the boundary of the two blocks and the calls are for the east line of one block to run to a corner on the north bank of the river and for the other block to begin at the corner on the river.

■ Since the natural object, the river, is made the boundary and the call is south to the river, the line between the two blocks is correctly located or constructed by beginning at the northeast corner of Block No. 3, being the re-entrant corner of the Rains survey, and running thence south to the bank of the river, even though substantial excesses in distance are thus given to the east line of Block No. 3 and to the west line of block No. 4. State v. Atlantic Oil Producing Co., 110 S. W. (2d) 953 (application for writ of error refused).

The location of the re-entrant corner of the Rains survey is certain and undisputed. The field notes in the deed contain nothing to identify the location of the southeast corner of Block No. 3 on the river except that they describe it as being south of the northeast corner of the block. Those who made the calculations and prepared the descriptions to be used in the deeds were mistaken as to the distance between the re-entrant corner of the Rains survey and the north bank of the river, because they used the meander lines of the river as contained in the patent without ascertaining the true course of the river; but this mistake in distance does not justify a departure from course in order to reach the river at a lesser distance and it does not justify subordination of the call for the river to the call for distance.

A construction of the blocks in the Francis Johnson survey by course and distance, disregarding the adjoinders shown on the Moore map, or a construction fitting the blocks to the meander lines as set out in the patent rather than to the river itself, would leave part of the land in the Johnson survey outside of the blocks, contrary to the intention of the parties clearly manifested to partition all of the land jointly owned. A case is not made for the apportionment of the excess within the survey among the nine blocks, as in Great Plains Oil & Gas Co. v. Foundation Oil Co., 137 Texas 324, 153 S. W. (2d) 452, because the facts are not sufficiently developed to prove where the line between Blocks Nos. 3 and 4 would be if that method were adopted, and because the excess could not be

apportioned without disregarding adjoinders of the blocks with corners and lines of the surveys to the north and east of the Johnson survey.

Petitioners in their brief filed in this court concede that the questions presented are questions of law and assert that unanswered special issues relating to a survey made by Joe Hoskins were immaterial and required no answers. They insist, however, that the acts of Hoskins are competent to prove the intention of the parties as to the location of the line in controversy. There is evidence that Hoskins, in the year 1914, made for James Moore a survey of the river and of the lines of blocks in the Francis Johnson survey. The time when the survey was made, whether before or after the preparation and execution of the deeds by which the land was partitioned, is not shown. The testimony as to Hoskins' survey of the line between Block No. 3 and Block No. 4 is conflicting. Petitioners called witnesses whose testimony tends to prove that Hoskins ran a line south 2° 18' west from the southwest corner of the Rains survey to the river and marked trees along that line and a tree at or near the intersection of the line with the north bank of the river. Witnesses for respondents testified to facts tending to prove that the line surveyed and marked by Hoskins ran from the southwest corner of the Rains survey south to the river.

■ If Hoskins' survey was made before the deeds were drawn and executed, the lines and corners that he marked were ignored by the land owners when they described in the deeds the land conveyed. The deeds and the map contain no reference to any line run or mark made by Hoskins. There is no evidence connecting his survey with the description contained in the deeds and appearing on the map. The undisputed evidence is that the descriptions for the deeds were made or calculated, without a survey, from the field notes contained in the patent to the Francis Johnson survey and from deeds by which the entire survey was conveyed. These facts bring the case within the general rule that the location of lines or corners of a survey may not be established or controlled by artificial objects or marks not called for in the field notes. Magnolia Petroleum Co. v. Jones, 138 Texas 67, 156 S. W. (2d) 548; Reast v. Donald, 84 Texas 648, 19 S. W. 795; Runkle v. Smith, 63 Texas Civ. App. 549, 133 S. W. 745; State v. Talkington, 274 S. W. 314.

If the Hoskins survey of a line between Block No. 3 and Block No. 4 was made after the joint owners executed and delivered the deeds, it could not affect the boundaries of the blocks as described in the deeds, unless the line surveyed became the boundary by express agreement or by acquiescense. There is no evidence tending to prove that the adjoining owners agreed upon, acquiesced in or used a line running south 2° 18' west from the southwest corner of the Rains survey. On the contrary, there is evidence of use and acceptance by the owners of the oil and gas leasehold estate in Block No. 3 and Block No. 4 of a line running south from the southwest corner of the Rains survey. They used that line as the boundary between the two blocks in spacing and drilling their wells.

The Court of Civil Appeals did not err in holding that its decision with respect to the location of the line between Block No. 3 and Block No. 4 rendered immaterial all other questions raised by the parties, including controversies between petitioners and The Superior Oil Company, the assignee of oil and gas leases executed by Helen Pritchard on parts of Block No. 4. The questions at issue between petitioners and The Superior Oil Company, as made by their pleadings in the trial court and as presented by assignments of error in the briefs in the Court of Civil Appeals, all arose from the assumption that the 7.85 acre tract in controversy herein was, or would be adjudged to be, within Block No. 4.

The judgments of the district court and the Court of Civil Appeals are affirmed.

Opinion adopted by the Supreme Court January 6, 1943.