### HALEY v. MURRAY et ux.

### No. 9418.

Court of Civil Appeals of Texas. Austin.

Jan. 19, 1944.

Rehearing Denied Feb. 2, 1944.

Sedberry & Williams, of San Angelo, for appellant.

Clyde Vinson, of San Angelo, for appellees.

BLAIR, Justice.

Nevel Haley sued Bid Murray and wife, alleging that he owned in Block 2 of the P. A. Williams Addition to the City of San Angelo what is known as the homestead of P. A. Williams, consisting of a dwelling house, a garage and driveway thereto located a few feet east of the dwelling house; and that Murray is building a fence and otherwise interfering with Haley's use of said premises, which acts Haley sought to restrain. Murray specifically denied these allegations and filed a plea of trespass to try title to Lot 4 in Block 2 of said Williams Addition. Haley's supplemental pleading described by calls for objects the land claimed by him as being a strip of land about 16½ feet wide and 140 feet long, and on a part of which is a wooden garage and the driveway thereto; and further claimed title to such premises under both the three years and the ten years statutes of limitations. Upon the jury's answers to special issues submitted, judgment was rendered for Murray and wife; hence this appeal.

The common source of title is P. A. Williams. Prior to the year 1927 he owned a tract of land lying between Buchanan and Florence Streets in the City of San Angelo, which in that year he caused to be surveyed and platted into said Williams Addition, consisting of Blocks 1, 2 and 3, divided into lots, and with street and alley dedication, the map, plat and dedication thereof being duly recorded in that year. In part this controversy involves Lots 2, 3 and 4 of Block 2 of said Williams Addition, and particularly the boundary line between Lots 3 and 4. The court appointed J. A. Simpson, County Surveyor of Tom Green County, to survey and locate this boundary line on the ground. Simpson made the original survey and map and plat of the said Williams Addition. Under the order of the court Simpson surveyed and located on the ground the boundary line between Lots 3 and 4, which the jury found to be the true boundary line. A photostat of his

map, introduced in evidence and showing the location of the south and north ends of said line as marked by iron bars, is hereto attached:

Haley claims title to the strip of land in controversy under a deed from P. A. Williams and wife to Frances Edna Williams, dated January 1, 1931, and a deed

This location of the boundary line between Lots 3 and 4 is shown on the map, which also shows that Lots 2, 3 and 4 each fronts south on Preusser Street, and that each is 55 feet wide and 140 feet deep, and that the strip 16½ feet wide and 140 feet long in controversy is located entirely on Lot 4 as depicted on the map.

from Frances Edna Williams to himself, dated October 20, 1942. The first deed described the property conveyed as "all that certain tract or parcel of land constituting our homestead on Preusser Street, in the City of San Angelo, Texas, and known and described as Lots Two (2) and Three (3), in Block Two (2), P. A. Williams Ad-

dition to the City of San Angelo, Tom Green County, Texas." This deed was dated January 1, 1931, and was filed for record August 29, 1931. The second deed described the land conveyed as "Lots Two (2) and Three (3), in Block Two (2), P. A. Williams Addition to the City of San Angelo, Tom Green County, Texas; *said property being located at 1110 Preusser Street in said City; fronting 110 feet more or less on said street and extending back 140 feet; and which includes driveway and garage on east side.*" The italicized words were inserted with pen and ink after Frances Edna Williams had executed it at El Paso, Texas, by her attorney at San Angelo, Texas, her brother, Harris Williams, who represented her in the sale of the property to Haley at San Angelo, having procured the closing of the sale by inserting the underscored words in the deed.

Murray and wife claimed title to Lot 4 in Block 2 of said Williams Addition under the following conveyances:

A deed of trust executed by P. A. Williams and wife to J. A. Thomas, Trustee for Dr. C. T. Keyes, contained a homestead designation and a conveyance of property to secure a loan, as follows:

"All of lots Nos. 1, 4, 5, 6 and 7, in Block No. 2, of the P. A. Williams Addition to the City of San Angelo, Texas, as shown by map and plat of said addition, filed December 29, 1927, in the office of the County Clerk of said County and State.

"To Have and to Hold etc.

"And the grantors herein hereby declare that the property hereinbefore mentioned and conveyed forms no part of any property by them owned, used or claimed as exempt from forced sale under the laws of the State of Texas, and disclaim and renounce all and every claim thereto under any such law or laws, and hereby designate the following described property, to-wit:

"Lots Nos. 2 and 3 only, in Block No. 2, of the P. A. Williams Addition to the City of San Angelo, Texas, as shown by the above mentioned map and plat of said addition, as our homestead, and as constituting all the property owned, used or claimed by us or by either of us as exempt under such laws."

This deed of trust was dated January 5, 1930, and recorded January 8, 1930, in the Deed Records of Tom Green County, Texas.

A deed, dated May 29, 1931, recorded June 3, 1931, from P. A. Williams to Dr. C. T. Keyes, recites the provisions of the foregoing deed of trust, referring to its place of record and the homestead provisions, and recites that the conveyance is in consideration of · the cancellation and surrender of the notes secured by the deed of trust; that the wife of P. A. Williams is dead; and that the indebtedness cancelled is a community debt, the conveyance being of "all of Lots Nos. One (1), Four (4), Five (5), Six (6), and Seven (7), in Block No. Two (2) of the P. A. Williams Addition to the City of San Angelo, Texas, as shown by map and plat thereof, filed in the office of the County Clerk of said County and State, on the 29th day of December, A.D.1927."

A prior affidavit of homestead designation by P. A. Williams and wife, dated June 9, 1927, and recorded June 15, 1927, described their homestead as "being 100 x 140 feet, being out of the R. Gerhart Survey No. 325, * * * and situated in the corporate limits of the City of San Angelo, Tom Green County, Texas." This affidavit was made prior to the platting and dedication of said Williams Addition in December, 1927, and is the same property as Lots 2 and 3, in Block 2 of said Williams Addition. This is shown by another affidavit, dated March 23, 1928, and recorded March 28, 1928, which describes the homestead of Williams and wife as "Lots No. Two (2) and No. Three (3), in Block No. Two (2), P. A. Williams Addition to the City of San Angelo."

Through mesne conveyances from Dr. C. T. Keyes, conveying Lot No. 4, in Block No. 2, in said Williams Addition, Murray and wife acquired title thereto by deed from Annie Lee Miller to Bid Murray, dated December 15, 1942, recorded December 17, 1942. Immediately thereafter Murray began the construction of a fence on the X line as shown on the attached map, and to improve the garage building, which Haley protested, claiming that he thought the boundary line between said Lots 3 and 4 ran somewhere through the garage building, which matter the parties agreed to settle by this suit.

Facts and circumstances surrounding the execution of all of the foregoing instruments by Williams and his wife and

by Williams alone are in substance, as follows:

Williams built the house and the garage and driveway thereto on what later became Lot 4, in Block 2, P. A. Williams Addition, prior to the platting and dedication of the Addition, the house being No. 1114 Preusser Street. The driveway was about four feet west of the house and extended westward to the west line of said Lot 4, where the jury found its true location to be. The house and garage were painted the same yellowish brown color. A "lean-to shed" was erected on the east wall of the garage and extended back of it, which was seven or eight feet wide and was accessible only by using the driveway and then turning right behind the dwelling house on Lot 4. At one time Williams and his family lived in this house and used the garage and driveway.

Williams also built the house on what later became Lots 2 and 3 in Block 2 of said Williams Addition, the house being No. 1110 Preusser Street, which was painted white. Williams and his family moved into this house about the year 1906, long prior to the time of the execution of any of the aforementioned instruments of title, and continued to so occupy it as their homestead until they conveyed it to their daughter, Frances Edna Williams, by the deed dated January 1, 1931; and Williams and his wife continued to live at this home place until their respective deaths, along with other members of the family, including Frances Edna Williams, when she was home from El Paso, where she taught school. The house at No. 1114 Preusser Street on Lot 4 was rented to tenants prior to its conveyance to Dr. C. T. Keyes, but none of them had an automobile, and the Williams family continued to use the driveway and garage in question for their automobiles. A witness testified that in 1929 he contemplated purchasing Lot 4 from Williams, and that "he told me the line ran on the east side of the wood part of the garage and the lean-to went with the place I was looking at."

In answer to Special Issue No. 1 the jury found that Williams and wife were using the garage and driveway as a part of their homestead at the time they conveyed it to their daughter by the deed dated January 1, 1931. However, in answer to Special Issue No. 2 the jury found that Williams and wife did not intend by

said deed to convey to their daughter the strip of land sued for by Haley and on which the garage and driveway are situated. And by answer to Special Issue No. 5 the jury found that the true boundary line between Lots 3 and 4 in Block 2 of said Williams Addition was the line marked on the map by iron bars at its north and south ends, which finding placed the strip of land sued for by Haley entirely within the boundary of Lot 4, in Block 2 of said Williams Addition. Upon these last two findings of the jury the trial court rendered judgment for Murray and wife, and denied Haley a recovery of title to the strip of land sued for by him.

By his first point Haley contends that the trial court erred in overruling his motion for judgment non obstante veredicto, or notwithstanding the jury's answer to Special Issue No. 2, because since the undisputed evidence showed and the jury found in answer to Special Issue No. 1 that at the time Williams and his wife executed the deed to their daughter on January 1, 1931, they were using the strip of land on which the garage and driveway were situated as a part of their homestead, the deed which described the land conveyed as being "all of that certain tract or parcel of land constituting our homestead on Preusser Street in the City of San Angelo, Texas, and known and described as Lots Two (2) and Three (3), in Block Two (2), P. A. Williams Addition to the City of San Angelo, Tom Green County, Texas," should be construed to have passed title to the strip of land sued for to Haley as a matter of law. And Haley further contends that the jury's finding that Williams and his wife did not intend by the deed to convey the strip of land in controversy is in the face of their solemn declaration in the deed that they were conveying "all that certain tract or parcel of land constituting our homestead on Preusser Street in the City of San Angelo, Texas"; and that when the actual tract or parcel of land used as the homestead was actually shown, same was not limited by the further description in the deed, "and known and described as Lots Two (2) and Three (3), in Block Two (2), P. A. Williams Addition to the City of San Angelo."

In support of the foregoing contentions many authorities are cited which lay down the general rules of construc-

tion of a deed. These rules are here stated in substance. Where a deed sufficiently describes property as a whole, such as "our homestead," parol evidence is admissible to apply the description to the parcel intended to be conveyed, when the terms of the deed are uncertain as to what land was intended to be embraced. Where a deed contains an accurate description of the land, which is followed by an inaccurate or insufficient description, the latter will be rejected. Where a general description is used in a deed, which is followed by an inconsistent description as second or cumulative, the latter will be rejected. And where by the aid of parol evidence of the surrounding facts and circumstances the land uncertainly described in the deed may be located on the ground, the construction of the deed to determine what land was intended to be conveyed is for the court and not for the jury. See Kingston v. Pickins, 46 Tex. 99; Giddings v. Lea, 84 Tex. 605, 19 S.W. 682; Pritchard v. Burnsides, Tex.Civ.App., 158 S.W.2d 586, affirmed Pritchard v. Burnside, Tex.Com.App., 167 S.W.2d 159; Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.2d 442; Cartwright v. Trueblood, 90 Tex. 535, 39 S.W. 930; Gulf Production Co. v. Spear, 125 Tex. 530, 84 S.W. 2d 452; Rettig v. Houston West End Realty Co., Tex.Com.App., 254 S.W. 765; Clayborn v. Gambill, Tex.Civ.App., 87 S. W.2d 508, error refused; Jones On Law of Real Property, Vol. 1, pp. 274, 345.

■ These general rules of construction of a deed are not disputed. When applied, however, to the deed of Williams and wife to their daughter, dated January 1, 1931, it must be construed as showing their intention to convey title to Lots 2 and 3 only, in Block 2 of the Williams Addition as their homestead, and not also to convey a part of Lot 4 in said Block 2 of said Addition as contended by Haley. The general description of the deed conveying "all of the tract or parcel of land constituting our homestead" is not followed by an inaccurate description of the homestead intended to be conveyed; but is followed by the specific, accurate and definite description of the homestead and as being "known and described as Lots Two (2) and Three (3) in Block Two (2), P. A. Williams Addition." This language of the deed is plain and unambiguous and accurately describes the land intended to be conveyed as "our homestead." The

contention that the general description "our homestead" should control would destroy the express terms of the deed, which specifically and accurately describe the land intended to be conveyed, and would vary the express and definite description of the land contained in the deed by parol evidence. The plain terms of the deed show that grantors intended to convey Lots 2 and 3 only, in Block 2, of the Williams Addition as being so "known and described" as their homestead. All of the surrounding facts and circumstances show the same intention. In their deed of trust securing the debt of Dr. Keyes, grantors declared that "Lots Nos. 2 and 3 only, in Block 2, P. A. Williams Addition" constituted their homestead and was "all the property owned, used or claimed" by them as homestead. This deed of trust did not convey a part only of Lot 4, in said Block 2 to secure the debt, but "all" of Lot 4. The other homestead dedication was of Lots 2 and 3 only, in Block 2. The deed of Williams to Dr. Keyes, executed in consideration of the cancellation of the debt secured by the deed of trust, referred to the homestead designation of Lots 2 and 3 only, in Block 2 of the Williams Addition, and conveyed "all" of Lot 4, in Block 2 of said Addition. Clearly, the deed in question and all of the surrounding facts and circumstances show as a matter of law that Lots 2 and 3 only, in Block 2, P. A. Williams Addition constituted the homestead intended to be conveyed. In consequence the only fact issue on this phase of the case was the location on the ground of the true boundary line between Lots 3 and 4 of said Addition, which the jury found to be the line marked on the map by iron bars at its north and south ends. This finding of the jury is fully supported by the evidence and concludes the claim of title under the deed in question against Haley.

■ If, however, any possible fact issue was raised as to what property Williams and wife intended to convey as "our homestead," then such fact issue was determined by the jury's answer to Special Issue No. 2 against Haley; and the facts fully support such finding.

In answer to special issues submitted, the jury found (1) that neither Haley nor those under whom he deraigned title had peaceable and adverse possession of the land in controversy for the ten years under which Haley claimed title by limita-

tion; (2) that Haley and his predecessor in title, Frances Edna Williams, and her tenants used the garage in question after August 1, 1931; (3) but that that use of the garage was not exclusive. Each of these findings of the jury is fully supported by the evidence; and the remaining points of error of Haley that such findings were not supported by evidence, or were against the great weight and overwhelming preponderance of the evidence, are not sustained.

Frances Edna Williams testified that after she acquired title to the homestead in 1931, she and her parents continued to live in it and to use the garage and driveway for some two or three years; that she then rented the property to tenants until she sold it in 1942 to Haley; but that she did not specifically rent them the driveway and garage in question; and that nothing was ever said about renting such premises as a part of the homestead. After the Keyes acquired title to Lot 4 in 1931, his tenants, or his successors in title and their tenants, until the time Bid Murray and wife acquired title to Lot 4, used part of the garage for storage purposes; and all of the occupants of Lot 4 testified that each of the tenants of Frances Edna Williams obtained permission to use the garage and driveway. Some of her tenants testified that they did not rent the garage and driveway from her, but secured permission from the owner or tenants of Lot 4 to use such premises. The driveway was not a necessary way to Lots 2 and 3, in Block 2, of the Williams Addition, and on which the homestead of the Williams was situated. The dwelling house and garage on Lot 4 were painted the same color. Under these facts we overrule the several contentions of Haley that he acquired title to the garage and driveway under the ten years statute of limitation, Vernon's Ann.Civ.St. art. 5510, or under any prescriptive right of easement, or as appurtenant to the title which he acquired under the deed from Williams and wife to their daughter and her deed to him.

The judgment of the trial court is affirmed.

Affirmed.

On Appellant's Motion for Rehearing.

Our statement that "at one time Williams and his family lived in this house (at 1114 Preusser Street, Lot 4) and used the garage and driveway," is attacked as being inaccurate. The statement is not controlling, if inaccurate, on the question of what property Williams and wife intended to convey as their homestead. Their homestead designation in the deed of trust securing the debt of Dr. Keyes described it as "Lots 2 and 3 only, in Block 2, P. A. Williams Addition." This homestead designation was prior to the conveyance of the homestead to the daughter. Shortly after the conveyance of the homestead to the daughter, which described it as being "known and described as Lots 2 and 3, in Block 2, Williams Addition," Williams conveyed, among others, "all of Lot 4" in said Addition to Keyes in satisfaction of the debt due him under the deed of trust, referring in the deed to the homestead designation of "Lots 2 and 3 only, in Block 2, P. A. Williams Addition." Thus Williams and wife were estopped to claim a part of Lot 4 as their homestead; and their daughter acquired under her deed from the parents only the property which her parents could claim as their homestead, or the title to Lots 2 and 3 only, in Block 2, Williams Addition. Schwarzer v. Calcasieu Lumber Co., Tex.Civ.App., 176 S.W.2d 597, 599, wherein this court held that "the principle which controls the issue of estoppel (independently of the issue of abandonment in fact) may be thus briefly stated: where the physical facts are such as to warrant a conclusion that the property in issue is not the homestead of the mortgagor, the mortgagee, in making the loan, may rely upon the representations (made for that purpose) of the mortgagor (here both the husband and wife), that the mortgaged property is not homestead, and the mortgagor will be thereby estopped from asserting its homestead character in derogation of the mortgage. There are many Texas adjudications supporting this principle. We cite only two of them from this court which cite a number among the many which might be cited. Llewellyn v. First Nat. Bank, Tex.Civ.App., 265 S.W. 222, and Wootton v. Jones, Tex.Civ. App., 286 S.W. 680. A review of the decisions upon a principle so well established as to be now elementary in Texas jurisprudence, we think unnecessary."

The motion for rehearing is overruled.

Overruled.