## STATE et al. v. HUMBLE OIL & REFINING CO. et al.

### No. 8727.

Court of Civil Appeals of Texas. Austin.

April 5, 1939.

Rehearing Denied May 3, 1939.

Wm. McCraw, Atty. Gen., and H. Grady Chandler, Russell Rentfro, and Henry S. Moore, Asst. Attys. Gen., for the State.

John T. Gano and Lightfoot, Robertson & Gano, all of Fort Worth, for appellants Thomas O. Payne and John T. Gano.

Sam Neathery, of Houston, for appellant Sam Neathery, Trustee.

Foster & Williams, of Conroe, Powell, Wirtz, Rauhut, & Gideon, Felts, Wheeler, & Wheeler, T. H. McGregor, Harris & Harris, Jack Roberts, and M. C. Robinson, all of Austin, O. Etheridge, of Conroe, James F. Parker, of Kountze, E. L. Reid, of Orange, John B. King, of Wichita Falls, J. W. Timmins, of Dallas, Albert J. DeLange, Thos. H. Stone, Robt. S. Durno, L. C. Kemp, Battaile & Burr, Vinson, Elkins, Weems & Francis, and Edd R. Campbell, all of Houston, Victor C. Mieher, of Tulsa, Okl., James & Conner, of Fort Worth, and Sewell, Taylor, Morris & Garwood, D. H. Gregg, and R. E. Seagler, all of Houston, for appellees.

BAUGH, Justice.

The State brought this suit against some 175 defendants to recover as vacant public lands about 618 acres in two tracts located in the Conroe Oil Field in Montgomery County, Texas, and for $5,000,000 damages for oil taken therefrom. Some of the defendants were claiming a preference right to an oil lease on said lands. Trial was to a jury on special issues, the result of their findings in answer to such issues being that the vacancy claimed by the State did not exist, and judgment was accordingly rendered against the State. The State and the defendants who claimed priority of right to an oil lease on said lands have appealed.

The controlling issues presented depend upon the proper location of Washington County R. R. Co. Surveys 13 and 14 in Montgomery County. There is also necessarily involved the proper location of T. & N. O. R. R. Co. Survey 16 in said county. These three surveys were originally made by John M. Wade in 1861. The

relative location of these various surveys, except the vacancies claimed, and as they appear on the maps on file in the General Land Office, are shown on the attached map: the north, west, south, and east of the lands here involved there existed in 1861 unsurveyed public domain of some 12,000 acres, or more, extending northwest and southeast for a distance of 5 or 6 miles. In

### DEFENDANTS' EXHIBIT NO. 4, SHOWING GROUND LOCATIONS

A general statement with reference to the older surveys in this area will contribute to a better understanding of the issues presented. The record discloses that both to the east and to the west of the area here involved numerous surveys had been laid out in 1838 and 1839 along the San Jacinto River on the west and along the Caney Fork of the San Jacinto River on the east. Between these old surveys to 1861 John M. Wade, district surveyor, undertook to survey these vacant lands. He began about 5 miles southeast of the tracts here involved and laid out 16 T. & N. O. R. R. Co. Surveys tying the eastern tier of said surveys to the senior surveys on the east; and the western tier of said surveys to senior surveys on the west. T. & N. O. Survey 15 was surveyed the day before T. & N. O. No. 16. T. & N.

O. No. 15 called to adjoin the Clark Beach west line and to run north with that line to within 100 varas of the south line of the Littlefield Survey. This survey was run out from east to west. T. & N. O. No. 16, surveyed the following day, began on the east line of the Ransom House Survey and called to extend eastward to the west line of T. & N. O. 15.

About 6 months after surveying the T. & N. O. sections, Wade surveyed W. C. R. R. Co. sections Nos. 13 and 14. His field notes for No. 13 called to begin at the N. W. corner of the Littlefield "on S. line of Wm. B. Bridges Sur.," thence to run west 1800 vrs. to the east line of the Weeden Survey; thence south with the east lines of the Weeden and Davis Surveys 2006 vrs.; thence east to the west line of the Littlefield; thence north with the west line of the Littlefield 2006 vrs. to the beginning. This section was patented on these field notes to the W. C. R. R. Co. in 1877.

The field notes of W. C. R. R. Co. No. 14 called to begin at the N. E. corner of T. & N. O. 16, surveyed by Wade about six months before, on the west line of T. & N. O. 15; thence to run north with the west line of T. & N. O. 15, 979 vrs. passing its N. E. corner, 1079 vrs. to the south line of the Littlefield; thence west with the S. line of the Littlefield 30 vrs. to its S. W. corner; thence north with the west line of the Littlefield 880 vrs. to the S. E. cor. of W. C. R. R. No. 13; thence west with the S. line of 13, 1800 vrs. to the S. W. cor. of 13; thence S. and W. with the lines of the Davis Survey around the S. E. corner of the Davis; thence S. 1915 vrs. to a corner; thence east with the north line of T. & N. O. 16, 1860 vrs. to the beginning.

It is not controverted that if W. C. R. R. Co. Surveys 13 and 14 be located by laying same out from, and in accordance with, Wade's calls for adjoinder to the senior surveys on the north and west—i. e. the Bridges, the Weeden (Owens), and the Davis—as those surveys are located on the ground, an irreconcilable conflict with, or departure from, the calls for the senior surveys to the east—i. e. the Littlefield, Beach, and T. & N. O. 15—as those surveys are indisputably located on the ground, will result.

On the other hand, if these two surveys be located in accordance with Wade's calls for the Littlefield and T. & N. O. 15

lines and corners as established on the ground, then they must be pulled away from the Bridges, Weeden, and Davis Surveys as located on the ground, and his calls for adjoinder to those surveys ignored.

The State contends that, as a matter of law, these two surveys must be located by the adjoinder calls for the senior surveys to the north and west. The appellees contend that they are properly located from their beginning calls on the senior surveys to the east, both as a matter of law under the undisputed facts; and under the findings of the jury.

■■ It is not controverted that W. C. R. R. Co. Surveys 13 and 14 must be regarded as a system of surveys, run out together by the same surveyor, and that they can not be separated. And the cardinal rule in locating such surveys is to follow the footsteps of the surveyor on the ground if they can be found. If they can not be found with certainty, all the surrounding facts and circumstances should be looked to in arriving at the purpose and intent of the surveyor, and so construed and applied as to carry into effect the most probable intent of the parties to the grant.

The Clark Beach Survey was surveyed in 1838 and patented in 1851 on its original field notes. Its west line as located on the ground is not questioned. The H. B. Littlefield was originally surveyed in the form of a rectangle in 1838, adjoining the Beach on the north and its west line and S. W. and N. W. corners definitely establishing on the ground as shown on the accompanying map, and as so established were located by Wade in 1861, and by several surveyors since then, the original bearing trees for the corners being identified as late as 1905. It was early discovered, however, that the original field notes of the Littlefield conflicted with the S. W. portion of the H. S. Williamson Survey, and in 1850 the Littlefield was resurveyed so as to eliminate this conflict and its configuration as a rectangle changed. The west line and the S. W. and N. W. corners of the original survey were, however, definitely retained in their original location. In 1839 the Wm. B. Bridges Survey was made. The field notes and map showed it to be in the form of a square, to join the north line of the Littlefield and to extend westward past the N. W. corner of the Littlefield. The Bridges likewise was resurveyed in 1849 under entirely different field notes from the original sur-

vey and was patented in 1849 under the new field notes. As resurveyed in 1849 its south line was moved approximately 900 vrs. north of the south line thereof as located in the original survey. This of necessity moved the Bridges S. line away from the N. line of the Littlefield as that line had long before been definitely established on the ground.

It is not controverted that the General Land Office map of 1861 showed all of the senior surveys to the west of the T. & N. O. and W. C. R. R. Co. Surveys, so far as their relative positions to these surveys and to the senior surveys to the east were concerned, to be located about 900 vrs. south of their true location on the ground. It also appears that the Commissioner of the General Land Office discovered sometime prior to 1899 errors and excess acreage in the T. & N. O. system of surveys as made by Wade. In 1899 a complete resurvey of the T. & N. O. system was made, wherein, along with others, the delineation of T. & N. O. Survey 16 was changed, but its west boundary line was retained in the position along the E. line of the Ransom House as called for by Wade in the 1861 field notes. The major portion of the north line of T. & N. O. 16, that is, most of it which Wade called to be the common boundary line between the W. C. R. R. Co. 14 and the T. & N. O. 16, was by Williams resurvey in 1899 shown to be about 900 vrs. south of where Wade's 1861 plat and field notes showed it to be.

After these resurveys had been made in 1899, the General Land Office corrected its map of this area to show the relative proper locations on the ground of the senior surveys to the west. Consequently the General Land Office map of 1901 showed that the westward extension of the north and south lines of the Beach, Littlefield, and T. & N. O. Survey 15 would intersect the east lines of the senior surveys to the west approximately 900 vrs. farther south than shown by the map of 1861, which latter map Wade undoubtedly had before him and relied upon when he made his surveys of N. C. R. R. Co. 13 and 14.

While Wade's field notes of W. C. R. R. Co. 13 called for its beginning point at the N. W. corner of the Littlefield to be on the S. line of the Bridges, as the original 1839 survey of the Bridges showed it to be, at that time the Bridges had been resurveyed and patented in a position on the ground 900 vrs. north of this point. This condition was discovered by the County Surveyor of Montgomery County and by the General Land Office as early as 1898, and in that year the Evantha Scurry Survey was located and patented to take up this area between the Littlefield and the Bridges as these two surveys were actually located on the ground. It was also found that the distance from the west line of the Littlefield to the Davis Survey, instead of being 1800 vrs., as called for by Wade in his field notes for the W. C. R. R. 13, was approximately 2100 vrs.; and in 1910 the Darby was surveyed and patented by the State.

In the sketch returned by Wade with his field notes for W. C. R. R. Co. 13 and 14, he did not show the Bridges nor the T. & N. O. 16, but did show the Littlefield, the Weeden, and the Davis as the senior surveys to which they adjoined. This sketch also showed their relative position adjoining the Littlefield according to the course and distance calls for its N. W. and S. W. corners. The evidence strongly indicates that Wade was on the ground and located the original N. W. and S. W. corners of the Littlefield in making his survey of 13 and 14. His sketch likewise showed adjoinder with the Weeden and Davis at the points called for in his field notes, and at the points where the 1861 Land Office map positions showed these surveys to be. But this map, as stated, showed them to be located about 900 vrs. south of their actual ground location.

By running out these W. C. R. R. Surveys 13 and 14 course and distance from the N. W. and S. W. corners of the Littlefield as these corners were originally located on the ground, the locations of which are not questioned, the other lines of these two surveys fall along old established and marked lines. These lines were shown by witnesses, who had lived in this area for some 50 years, to have been recognized and accepted as the lines of these surveys. If these two surveys be located as the State contends, by the calls for the Bridges, Weeden, and Davis Surveys, at the points called for by Wade, there was found no evidence of any such markings of lines and corners at such points. It was the opinion of surveyor Boyles, who had done a great deal of surveying in this area during the last 25 years, and of the other surveyors who testified after an examina-

tion of maps, field notes, and other known data, that Wade, in surveying 13 and 14 had actually located on the ground the west line, S. W. and N. W. corners of the Little-field which he called for; and had run the north line of 13 west as an extension of the north line of the Littlefield. That his call for the south line of the Bridges in this location was based upon the 1839 field notes of the original survey thereof, not knowing that its resurvey in 1849 as already patented, had moved the Bridges 900 vrs. north of the N. W. corner of the Littlefield; and that his calls for the Weeden and Davis Surveys were not based upon actual location on the ground of these lines, but were supposition calls for such locations based upon the positions of these surveys shown by the Land Office map of 1861, which erroneously showed them to be 900 vrs. south of their true ground locations.

It is admitted that these W. C. R. R. Co. Surveys 13 and 14 can not be located on the ground so as to conform to all of Wade's field note calls therefor. Irreconcilable conflicts occur whether located according to the appellants' theory or according to appellees' theory. It is manifest that Wade did not and could not have run the lines of these surveys to the points called for by him as same were actually located on the ground. He was either mistaken as to the location of his beginning points on the east, or as to the location on the ground of the senior surveys to the west.

With these general facts above outlined shown, and numerous other detailed circumstances which we have not undertaken to enumerate, ten special issues were submitted to the jury. While appellants assert that the issues as submitted were issues of law and not of fact, no objection was made on the trial either to the form or substance of such issues as submitted, and no assignments are presented in that regard.

■ It is unnecessary to here set out these issues, but as submitted and answered the jury in effect found that Wade began his survey of W. C. R. R. No. 13 at the N. W. corner of the Littlefield as located on the ground, and not on the south line of the Bridges; that he did not run to the ground locations of the Weeden and Davis Surveys; and that W. C. R. R. Co. Survey 14 was also located on the ground by Wade in accord with his calls for the Littlefield. From the facts and circum-

stances briefly stated above, it is manifest that there was ample evidence to sustain these fact findings of the jury.

The location of these surveys in accordance with such findings is in keeping with their recognized location over a period of forty years, both by land owners and by the General Land Office, as evidenced by issuance of a patent in 1898 to the Evantha Scurry tract between the Littlefield and Bridges Surveys; and to the C. T. Darby Survey in 1910. That Wade intended to locate these surveys from the established lines and corners of the Littlefield is we think manifest. The evidence strongly indicates that he was on the ground at these established points. A definite established beginning point is thus found on the ground. His error in calling for adjoinder at stated locations on the Weeden and Davis Surveys can readily be attributed to the fact that the General Land Office map then in use erroneously showed these surveys to be located where Wade's course and distance lines would have taken him to, had these surveys been in fact located on the ground where the map showed them to be. But they were located in fact 900 vrs. north of where the map showed them to be located. Under these circumstances, it is clear that by far the most reliable calls for properly locating said surveys are the lines and corners of the Littlefield. As so located no confusion of recognized lines and surveys on the ground is created. On the other hand, if these surveys be located as urged by the State, other grants made by the State and of long standing will be in whole or in part invalidated, and great confusion as to recognized land lines and titles would result. See Blaffer v. State, Tex.Civ.App., 31 S.W.2d 172, error refused. Without undertaking to set out or discuss the different contentions ably presented by appellants, or the now well established canons of construction judicially laid down and applied in properly locating such surveys; it is clear that the location of these surveys both under the undisputed facts, and under the jury findings, accords with the principles laid down in Wilson v. Giraud, 111 Tex. 253, 231 S.W. 1074; State v. Sullivan, 127 Tex. 525, 92 S.W.2d 228; and State v. Sun Oil Co., Tex.Civ. App., 114 S.W.2d 936 writ refused.

Nor is any question here presented of the State being "mapped out" of any of its lands. The record affirmatively shows that by the refusal to establish the vacancy as-

serted, the State will not have lost any of its lands in this area. Under the re-surveys since Wade made his surveys in 1861, the State has parted with and been paid for all of its acreage in this area. The net result of sustaining the appellants' contention in the instant case would be to invalidate former grants made by the State and create confusion as to the location of surveys long since patented by the State, whose location has been recognized by the General Land Office for forty years.

While other reasons, which appear to be valid, are presented to show that no va-cancy exists in tract 1 as shown on the at-tached map; we think the grounds above stated are so clearly controlling that fur-ther discussion appears unnecessary. For the reasons stated the judgment of the trial court will be affirmed.

Affirmed.