## PRITCHARD et al. v. BURNSIDES et al.
### No. 14318.

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 9, 1942.

Rehearing Denied Feb. 6, 1942.

Harrington & Harrington and Angus Wynne, all of Longview, and Williams & Williams, of Austin, for appellants Helen Pritchard and others.

W. B. Wagner and J. P. Adoue, both of Houston, for appellee Superior Oil Co.

Truman Post Young, of St. Louis, Mo., Pinckney G. McElwee and Palmer Bradley, both of Houston, and Jack E. Price, of Longview (Thompson, Mitchell, Thompson & Young, of St. Louis, Mo., and Lacy & Price, of Longview, of counsel), for appellees.

McDONALD, Chief Justice.

This suit involves the location of the boundary line between Blocks 3 and 4 of the Francis W. Johnson Survey in Gregg County.

In 1914, the Francis W. Johnson Survey, and a small amount of land in an adjoining survey, was owned by several persons, including one James Moore. In the year mentioned, the several owners caused the land to be divided into nine tracts, and executed deeds effecting a partition of the land. For details concerning this partition, reference is made to the opinion in Beck v. Gulf Production Co., Tex.Civ.App., 113 S.W.2d 258, error refused. Although it is said in the opinion in the Beck case that the partition was made from a survey on the ground, it is contended by all parties to this suit that the line between Blocks 3 and 4 regardless of what might have been done elsewhere was not surveyed on the ground but that the descriptions in the deeds conveying Blocks 3 and 4 were prepared from an office survey made by surveyor W. E. Jones. Jones testified that he prepared a map from the field notes of the Johnson Survey and from prior deeds conveying the entire tract; that he made his calculations of course and distance from these notes and deeds and not from any work done on the ground; and that his location of the Sabine River on his map was according to the field notes of the Survey and not from any work done on the ground. Despite the holding in the Beck case we are compelled to hold here, in view of the contentions of both parties and of the record before us, that the case on appeal involves an office survey, and not a survey on the ground.

Reference is also made to the opinion in State v. Atlantic Oil Producing Co., Tex.Civ.App., 110 S.W.2d 953, error refused, in which is considered the fact, also shown in the record before us, that the calls for the meanders of the Sabine River, contained in the field notes of the Johnson Survey, do not correspond with the actual

meanders of the river on the ground. It is there held that the location of the river on the ground, and not the meander calls in the field notes, control the boundaries of the survey.

Below is a rough sketch which will assist in the presentation of the problem involved. The sketch is not drawn to scale, and is included for purposes of illustration only.

shaded portion of the map, from B to C, thence down the river to D, and from D to B, is the area in controversy. Appellants, and the appellee Superior Oil Company, claim that the area in controversy lies within Block 4, while the remaining appellees claim that the area in controversy lies within Block 3. Since the parties all agree upon the location of points

The point A represents a re-entrant corner of the G. R. Rains Survey, which adjoins the Johnson Survey. Point B represents the most southerly southwest corner of the Rains Survey, the location of which on the ground is agreed upon by all of the parties. C is the point which plaintiffs, who are appellants here, contend to be the southeast corner of Block 3 and the southwest corner of Block 4. D is the point which the owners of Block 3 contend to be the southeast corner of Block 3 and the southwest corner of Block 4. The

A and B, the proper location of the southeast corner of Block 3 is the sole question to be determined, in view of the disposition which we make of the case.

There was much testimony relating to some surveying done by a surveyor named Hoskins, who was dead at the time of the trial. The testimony indicates that at some time, not definitely determined, but at about the time the partition was made, the surveyor Hoskins did some surveying work along or near the dividing line between these two Blocks. It is indicated that he

ran a line from B to C on one day, and then ran another line from B to D on the next day. But the evidence completely fails to show that the parties interested in the land ever accepted either of the lines run by Hoskins, and there is an entire absence of any proof to show that his work, or any part of it, was used in the preparation of the partition deeds. Issues were submitted to the jury inquiring as to the corner established by Hoskins, but the jury failed to answer those issues. And, as we have said, all parties in their briefs vehemently assert that the partition was based upon the office survey made by Jones, and not upon the surveying done on the ground by Hoskins.

Jones testified, without contradiction, that he prepared his map, and calculated his courses and distances, from the calls in the field notes of the Johnson Survey and from the calls in prior deeds which conveyed the entire tract. From the evidence it appears undisputed that the calls in the field notes for the meanders of the Sabine River near the point in question are substantially as indicated by the dotted lines on the above sketch, and that the location of the river on the ground varies from those calls substantially as indicated by the sketch. On the Jones map, the river is shown to run according to the calls in the field notes, and not according to its location on the ground.

The description of Block 3 in the partition deeds is as follows:

"On the Francis Johnson Headright Survey being known as Block No. 3 as divided and mapped by said parties interested and more fully described as follows, to-wit:

"Beginning at the southeast corner of block No. 2, a stake on the north bank of the Sabine River; thence north 1850 varas to a corner; thence east 1440 varas to a corner; thence south 1090 varas to a corner on the north bank of said river; thence southwest along the bank of said river to the place of beginning, containing 420 acres of land, more or less."

The description of Block 4 contains a similar reference to the map, and begins at the southeast corner of Block 3.

■ ■ As was held in the Beck case, supra, it was undoubtedly the intention of the parties to the partition to divide all of the Francis W. Johnson Survey, and not to reserve from the division any part of the land. The reasoning employed by Judge Smedley, in Great Plains Oil & Gas Co. v. Foundation Oil Co., Tex.Sup., 153 S.W.2d 452, seems applicable here. It is there held that the court should adopt the method of construction which will most nearly and fairly accomplish the intention of the parties. Judge Smedley sought to determine what he called the dominant purpose of the partitioners. In the case before us the parties had a surveyor prepare a map. That map was referred to in the partition deeds, and it is agreed by all parties that the map must be resorted to for a proper construction of the deeds. This is permitted under familiar rules. Lewis v. East Texas Finance Co., 136 Tex. 149, 146 S.W.2d 977. When we consider the obvious intention of the parties to divide all of the land, together with the calls in the partition deeds, the map, and the actual distances on the ground, a conflict develops. The deed to Block 3 calls the north line to be 1440 varas long. The north line of Block 2 is called to be 460 varas long. The total of these two calls is 1900 varas, which is the distance called for in the respective field notes of the Rains Survey and the Johnson Survey. It is indisputable that the surveyor Jones, in making his office survey, considered that this line of the Johnson and Rains Surveys was 1900 varas long. The map he prepared shows the north lines of Blocks 2 and 3 to be coincident with this dividing line between the Rains and Johnson Surveys, and shows the northeast corner of Block 3 to be at the re-entrant corner of the Rains Survey, which is one of the corners of the Johnson Survey. Actually, on the ground, there is an excess of more than forty varas in this line between the Rains and Johnson Surveys (the most northerly south line of the Rains). The call for the north line of Block 3, in the partition deed, is "thence east 1440 varas to a corner". The deed does not expressly call for the corner of the Johnson Survey or for the re-entrant corner of the Rains Survey.

Plaintiffs filed an original petition and six amended petitions. Plaintiffs' original petition reflects the theory that the north line of Block 3 must be run 1440 varas east from its northwest corner, and the east line south from the point thus located, which would result in the exclusion from the partition of a small tract of land lying between the east line of Block 3 and the line of the Rains Survey. Apparently realizing the propriety of the holding in the Beck case to the effect that the deeds must be construed in such manner as to effect a division of all of the land, plaintiffs finally developed the theory

presented by their sixth amended petition and in their brief. It is that the northeast corner of Block 3 should be located at the re-entrant corner of the Rains Survey, and that the east line of Block 3 should be run along the most southerly west line of the Rains Survey to its most southerly southwest corner, the location of which is agreed upon by all parties, and thence south 2 degrees 18 minutes west to a point on the so-called north bend of the Sabine River. Plaintiffs' contentions with respect to the location of the point last mentioned are confusing. Plaintiffs argue in the strongest language that the surveying done by Hoskins has nothing to do with the case, as has been said earlier in this opinion. The following is a quotation from their brief: "There is nothing in the record which can be warped by grace of inflection or poetic license into a scintilla of evidence that anything except the Jones-Moore map and descriptions in the deeds was used in the partition."

But the only fact or circumstance we can possibly find from the entire record, or from the arguments in the briefs, even remotely tending to establish the southeast corner of Block 3 at the point south 2 degrees 18 minutes west from the southwest corner of the Rains Survey is the evidence of certain witnesses that the surveyor Hoskins may have made a location for a corner, tentative or otherwise, at this point, for some undisclosed purpose, and at some time which may have been before or may have been after the partition deeds were prepared.

Plaintiffs do argue that the map shows that the parties to the partition deeds intended that the southeast corner of 3, which is the southwest corner of 4, should be upon the north bend of the river. But, except for testimony relating to the Hoskins surveying, there is nothing in the record to show where upon the north bend of the river the corner should be located. Plaintiffs' brief seems to present the inconsistent contentions that the Hoskins surveying had nothing to do with the partition, that the line in question must be located solely from the deeds and the map, and that the parties intended to locate the line in accordance with the work done on the ground by Hoskins.

■ To us the cause of the controversy, and the solution of it, appear fairly simple. When Jones prepared his map he located the meanders of the river, including the so-called north bend, from the calls in the field notes. According to the field notes, the line running south from the southwest corner of the Rains Survey intersected the north bend of the river. On the ground, the bend of the river lies to the west of the location indicated by the field notes. As a result, the line running south from the Rains corner misses the north bend of the river, and strikes the river at a point some distance down the river. Applying what we conceive to be the underlying principles of the Beck case, the Lewis case, and the Great Plains Oil & Gas Co. case, supra, we hold that the northeast corner of Block 3 must be located at the re-entrant corner of the Rains Survey, and that the east line of Block 3 must then be run south along the west line of the Rains, passing its southwest corner, and continuing on the same course until it strikes the river. We simply cannot find any basis for holding otherwise. The following cases are in point on the proposition that the line should be run to the river, even though the river may be located differently than thought by the parties. French-Glenn Live Stock Co. v. Springer, 185 U.S. 47, 22 S.Ct. 563, 46 L.Ed. 800; St. Paul & Pacific R. Co. v. Schurmeier, 7 Wall. 272, 19 L.Ed. 74; Walker v. Bailey, Tex.Civ.App., 69 S.W.2d 780.

The jury made an affirmative answer to the following issue: "Special Issue No. 2. Do you find from a preponderance of the evidence that by deed dated May 27th, 1914, recorded in Vol. 28, page 330, Deed Records of Gregg County, Texas, the parties to such deed intended that the S East corner of Block No. 3 described therein would be at a point on the North bank of the Sabine River, South 2 deg. 18 min. West from the Southwest corner of the G. R. Rains Survey?"

The jury answered the following issue in the negative: "Special Issue No. 4. Do you find from a preponderance of the evidence that by the deed dated May 27th, 1914, recorded in Vol. 28, page 330, Deed Records of Gregg County, Texas, the parties to such deed intended that the East line of Block No. 3 described therein would extend from the southwest corner of the G. R. Rains Survey, south to a point on the North bank of the Sabine River?"

The answers to these issues appear favorable to the plaintiffs. The trial court rendered judgment against the plaintiffs. It is not entirely clear from the recitals of the judgment whether he rendered judgment notwithstanding the answers to the

above two issues, or upon some other ground. Plaintiffs attached to their motion for new trial what was alleged to be a letter written by the judge of the court below to the various attorneys in the case, reciting that he believed that the evidence supported the findings above set out, but that he believed the plaintiffs were precluded from a recovery upon certain grounds of estoppel not submitted to the jury.

Since the letter written by the judge was not filed by him as a part of the record, and appears in the transcript only as an exhibit to the plaintiffs' motion for new trial, we know of no rule which authorizes us to consider it as a part of the judgment, or for any other purpose. We are of opinion that our review of the case must be confined to the record which is provided for by the laws applicable.

Without resort to the statute authorizing a judgment non obstante veredicto, the court may render judgment notwithstanding the answers of the jury to immaterial issues, where the state of the evidence so justifies. 25 Texas Jur. 494.

Here the material facts which must determine the construction of the deeds in question are undisputed. The only difference between the parties is the interpretation which must be placed upon these facts. It was the province of the court, and not the jury, to construe the effect of the deeds and the map. Where the surrounding material facts were undisputed, as they were here, the question of the intention of the parties was not one for the jury, but should have been determined by the court from the deed and map and the undisputed facts and circumstances surrounding the making of the map and the preparation and execution of the deeds. 7 Tex.Jur. 252-257; 11 C.J.S., Boundaries, § 118, p. 728; Walker v. Bailey, Tex.Civ. App., 69 S.W.2d 780; Rhoden v. Bergman, Tex.Civ.App., 75 S.W.2d 993, error refused. As is said in 17 C.J.S., Contracts, § 617, p. 1286, referring to the construction of contracts generally: "Strictly speaking, however, the interpretation of the contract is not submitted to the jury; the court may first inform the jury as to the law, or the jury may first inform the court as to the facts, as may be the more practicable course. In so far as the question is one of construction, it is always a question of law, although the facts on which the construction rests must be determined by the jury * * *."

In a suit which in its nature is an undertaking to enforce the deed, as distinguished from a suit to cancel or reform it, the question of the intention of the parties to the deed will not be submitted to the jury. If the case requires an examination of surrounding facts and circumstances, as where there is an ambiguity in the deed or where one develops when the description is applied to the ground, the jury may find what the surrounding facts and circumstances were, if there is a conflict in the testimony regarding them, but, when such facts are found, the court will determine the intention of the parties and will construe the deed.

Disregarding the immaterial issues above mentioned, it must be held from the record that the dividing line between Blocks 3 and 4 is not at the point claimed by plaintiffs, but is a southerly continuation of the most southerly west line of the Rains Survey. This renders immaterial all other questions raised by any of the parties.

The judgment of the trial court is affirmed.