The CITY OF CARROLLTON,
Texas, Appellant,

v.

R.A. DUNCAN and Oscar H.
Duncan, Appellees.

No. 2–86–128–CV.

Court of Appeals of Texas,
Fort Worth.

Nov. 25, 1987.

Rehearing Denied Dec. 30, 1987.

Law, Snakard & Gambill, Walter S. Fortney and John W. McNey, Fort Worth, for appellant.

Payne & Vendig, Talmage Boston, Dallas, for appellees.

Before FENDER, C.J., and BURDOCK and HILL, JJ.

## OPINION

FENDER, Chief Justice.

This is an appeal by the City of Carrollton, Texas ("City") from a judgment establishing the boundary of lands owned by R.A. Duncan and Oscar H. Duncan ("Duncans") adjoining City's land being used as a golf course. The litigation was begun as a suit in trespass to try title and for damages but was finally litigated as a dispute as to the actual location on the ground of the boundary of the Duncan tract according to its description in an 1880 deed. The judgment decreed the boundary to be as claimed by the Duncans, and awarded attorney's fees to the Duncans. The issues of rental value and tree damage had, by agreement, been ordered tried in a separate trial, but after the trial court signed its interlocutory judgment in favor of the Duncans, the parties stipulated that damages amounted to $16,000.00. Accordingly, the judgment included the award of damages in that amount.

City's appeal is based upon: claims of factual and legal insufficiency of evidence;

1. In Texas, one vara is equal to 33.33 inches.

error in failing to award title and possession of disputed property; admitting evidence regarding ad valorem tax records; failing to make an express finding that the cost of the Duncans' abstract of title could not be taxed as a court cost; and awarding damages and attorney's fees.

We affirm.

The Duncans' land is the same land conveyed in 1880 from one C.S. McLaughlin to Eugene Duncan. Its description is as follows:

ALSO another tract of land known as eleven acres of the Joel Wilson Survey on the North boundary line of the 160 acre tract owned by M.J. and S.B. Collins.

BEGINNING on said line at the East bank of the Elm.

THENCE East 105 vars.[1] to a stake in said line.

THENCE South 400 vars. to stake from which a small ash blazed on four bears North 48½° West 2 varas to a leaning oak ash marked X bears south 66° West 3½ vars.

THENCE West 335 vars corner in slough a cotton wood marked X bears North 63° West 3 vars.

THENCE North 50 vrs to Elm Fork

THENCE up said stream to beginning.

Before reviewing the evidence presented by the parties in their efforts to show the true location of the described tract on the ground, we summarize generally accepted rules of law in boundary cases.

The cardinal rule is that the footsteps of the original surveyor, if they can be ascertained, should be followed when attempting to locate the true lines of a survey. Where that cannot be done with reasonable certainty, all the surrounding facts and circumstances should be considered in order to arrive at the purpose and intent of the surveyor who made the original survey. *State v. Sun Oil Co.*, Tex.Civ.App., 114 S.W.2d 936, writ ref.; *State v. Humble Oil & Ref. Co.*, Tex.Civ.App., 128 S.W.2d 424, writ ref.; *Gill v.*

*Peterson,* 126 Tex. 216, 86 S.W.2d 629; *Gill v. Grimes,* Tex.Civ.App., 238 S.W.2d 989.

*Hurr v. Hildebrand,* 388 S.W.2d 284, 288 (Tex.Civ.App.—Houston 1965, writ ref'd n.r.e.).

It is the law of Texas in locating disputed boundary lines that preference must be given to the calls of the original grant, which in their application to the particular facts in issue are more specific and definite in preference to others merely general and indefinite or descriptive. *Finberg v. Gilbert,* 104 Tex. 539, 546, 141 S.W. 82. The conclusions of a wise jurisprudence are that calls are of primary importance in the following order: (1) Natural objects; (2) artificial objects; (3) course; (4) distance. The reasons of the law that gives dignity to calls in the order named are given by the court in *Stafford v. King,* 30 Tex. 257, 94 Am. Dec. 304. But this rule is not absolute in its application, and must yield to the general and broader principle reannounced in *Finberg v. Gilbert, supra.* This rule is well stated as follows by appellants:

"Every rule of evidence laid down for guidance in boundary questions is for the purpose of ascertaining the true location of the line in dispute, by which is meant the place at which the original surveyor ran the line. After 90 years have elapsed and time has destroyed in large measure the evidence left by the original locater, it is then permissible, not only permissible, but of necessity is required, that we resort to any evidence tending to establish the place of the original footsteps which meets the requirement that it is the best evidence of which the case is susceptible."

*Taylor v. Higgins Oil & Fuel Co.,* 2 S.W. 2d 288, 300 (Tex.Civ.App.—Beaumont 1928, no writ).

Natural objects are mountains, lakes, rivers, creeks, rocks, and the like. Artificial objects are marked lines, trees, stakes, etc.

*Stafford v. King,* 30 Tex. 257, 271 (1867).

R.A. Duncan, co-owner of the tract in question, who was 63 years old at the time of trial, testified that he was born about three miles from the tract and had been on the land frequently since he was old enough to remember. He testified that the north end of the property had been under fence during his lifetime and some of the old remnants of that fence were still in place at the time of trial. He stated the eastern boundary had also been fenced and there were still remnants of that fence all along the fence line. He further stated that the property had been fenced on the south side but that recently the appellant, City, had removed all of the remaining fence to construct its golf course.

Duncan then stated that he had seen the stake referred to as being 105 varas east of the starting point many times, the last time being in 1974, when he pointed it out to a surveyor named McDaniels during the course of McDaniels' survey of an 8.36 acre tract lying to the east, whose northwest corner was the same point as the northeast corner of the tract in question. The stake he described was a buggy axle, and he stated that it had either been removed or covered up by the golf course construction, but he could, and did in 1984, establish its previous location within a foot or so. That location coincides with the point where his surveyor, Gilbreath, marked the location of the northeast corner of the Duncan tract when he did his survey in preparation for trial. Such location is now in a sand trap on the twelfth hole of the City-owned golf course.

Duncan testified as to the movement of the east bank of the Elm during the last fifty-five years as being less than ten feet toward the east except in the bend where the easterly movement of the bank was estimated as thirty feet. Such determinations were made upon the basis of the present location of a number of trees which he remembered as being on the west bank when he was a child and one especially large tree on the east bank.

Duncan testified that he had been paying taxes to Denton County and to the Lewisville Independent School District. Records of the taxing entities were allowed in evi-

dence for the limited purpose of showing the area of the tract so taxed to be eleven acres. The Duncans became aware that the City was building a golf course that encroached on their land in 1983. R.A. Duncan complained about the encroachment to the City Manager and to the City Council, to no avail. He then employed counsel and gave the City notice and a demand to vacate in August of 1984.

Walter Steven Gilbreath, the land surveyor and engineer hired by the Duncans, testified that he was able to locate, on the ground, the property described in the 1880 deed.

His graphic representation of the tract, Plaintiff's Exhibit 16, which came into evidence without objection, is reproduced here in our drawing. The drawing is not to scale and is illustrative only.

Gilbreath's first step was to locate the north boundary line of the 160 acres owned by M.J. and S.B. Collins by the use of deed records, the locations of evidence on the ground and aerial photographs.

At point A he found an old fence line consisting of bois d'arc posts and a galvanized pipe and then a series of posts that trailed off into the woods. At Point B he found "two different spots where barbed

wire was projecting out of the bank of the river" on the east side. Point C represents a point on the extension of the line through A and B "very, very near" the point where the buggy axle's location was pointed out to him by Duncan. The surveyor marked that point with a nail and flagging. In order to verify the accuracy of Point C, Gilbreath proceeded due south for other evidence of a property line. At Point D strands of barbed wire were found embedded in a tree. The wire pointed due south and was generally along the line projected south from C. There were other strands of wire embedded in the tree that were described as pointing east and west. Gilbreath then found a three-quarter inch steel pin, vertically situated in the ground, with its top about an inch below the surface, at Point E. He found the steel pin's location on the line significant because such pins are commonly used to mark property corners as man made monuments. At Point F he found another tree with a strand of barbed wire embedded in it. The wire pointed north along the line being followed. Alignment of Points F, E and D were found to be generally a straight line.

Gilbreath's search for the stake and witness trees called for as establishing the southeast corner of the tract was unsuccessful, so he looked for other evidence. He found two strands of barbed wire buried in silt at Point G. They were aligned generally in an east-west direction. Another strand of barbed wire, also running east and west and buried about the same depth, was located a short distance away. Point H marks the location of a tree with wire completely embedded in it which bore scars

consistent with its having leaned over barbed wire. A bearing taken between Points G and H, a distance of 400 feet, was exactly east-west. Believing this old fence line to mark the southern boundary of the 1880 Witt to Myers tract, the surveyor went due west to look for the southwest corner of the Duncan tract. He found a slough, as called for, and the stump of a very large cottonwood tree. It was described as "very large, very old, and was on the edge of the slough, and was also the only cottonwood in the area." Gilbreath computed the area of the tract he surveyed to be 10.94 acres. He prepared field notes based upon his resurvey.

Garey Gilley, an impressively qualified licensed land surveyor, was employed by City to make a thorough investigation of all the records pertaining to the Duncans' tract, and to prepare a legal description of it. He reviewed all of the records of the General Land Office in Austin and the Denton County Deed Records to assemble a working sketch of the original Joel Wilson Survey and adjacent lands approximately three miles north and south and two miles east and west. In his opinion the Duncan tract could not be located on the ground solely from the description in its deed because natural destruction of trees and wooden stakes referred to by the original surveyor. Although he never attempted to actually locate any corner or boundary line on the ground, he prepared a legal description of the Duncan tract. To illustrate his legal description, a portion of Defendant's Exhibit 5, not drawn to scale, is here reproduced.

The south one-half of the original Joel Wilson Survey is a 950.4 vara square. The Witt to Myers tract was first located by starting at the northeast corner of the south half of the Joel Wilson and the fol-

lowing calls: 352½ varas west to a stake (northeast corner of a piece of land sold to E.S. Billings by W.J. and T.B. Collins), thence south 400 varas to the southeast

corner of said Billings tract thence 352½ varas east to the east boundary of said Wilson Survey, thence 400 varas north to the place of beginning.

The Collins–Husky tract called for its beginning at the northwest corner of the south one-half of the Wilson Survey. The next call was 469 varas east to a stake in the channel of the Elm Fork of the Trinity River.

In doing his legal description of the Duncan tract, Gilley began with a point described as "on the north line of the south one-half of the Wilson Survey at the northwest corner of the tract described in the deed from Witt to Myers, and being a distance of three hundred fifty-two and one-half varas west of the northeast corner of said south one-half." (Point "A") The calls then proceed south and west the distances called for, (Points "B" and "C") north to the bank of the Elm Fork (Point "D"), along the east bank to the north line of the south one-half of the Wilson (Point "E"), and easterly along that line to the beginning.

Gilley testified that he had not found, on the ground, the beginning point he used, but he was convinced "[f]rom reviewing the records" that it could be found. He admitted that the Duncan tract originally described contained eleven acres, but the tract encompassed by his property description contained only four acres.

During Gilley's cross-examination, he acknowledged that Spry's *Introduction to Texas Land Surveying*, Fourth Edition is used and referred to by surveyors, but he generally disagreed with the following passages read to him from that book:

A. "Because of this condition the rules and boundary cases, especially the rules of evidence, are much more liberal than those governing other actions. As an instance of this it may be pointed out that when the marks left by the surveyor have disappeared, and therefore it is permissible and necessary to resort to the best evidence, which the case is acceptable, including general understanding in the neighborhood, declarations of the person familiar with the boundaries and objects on the line of the survey, evidence which in other cases would be rejected as hearsay."

. . . .

A. . . . "A fence erected on a survey line shortly after the land has been surveyed will control course and distance of subsequent survey made after the stakes in the original survey have disappeared."

. . . .

A. "The question whether the course and distance carries the line to a certain point is not one of construction but a boundary or location to to [sic] be determined as a question of fact upon evidence in the case. Thus, in discussing this subject it is said, actual occupation, age, reputation and the admission of the parties in possession against his interest, ancient maps, marked trees and lines of adjoining surveys, monuments erected at or soon after the date of grant of adjoining surveys are all admissible for this purpose and are constantly resorted to to [sic] fix the boundaries throw[n] in conflict with the course and distance called for in the deed."

Gilley stated there are other books contradicting the above writing of Spry.

In reviewing a factual insufficiency point of error we must review all of the evidence to determine if the evidence supporting a finding is so weak or the evidence to the contrary is so overwhelming that a new trial should be ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). Applying that standard, in the light of the authorities we have set out earlier, we cannot say the evidence supporting the finding that Gilbreath's resurvey and resultant property description was the proper one was so weak as to require a new trial. R.A. Duncan testified that the tract owned by his grandfather was completely fenced at one time and that he knew where the northeast corner had been marked by the buggy axle. Whether that axle was the original stake driven by the original surveyor or later placed to mark the known point, it is competent evidence in the category described in *Taylor*, 2 S.W.2d at 300, as "the best evidence of which the case is

susceptible." Its location appears to have been verified by Gilbreath when he went over the ground four or five times and found evidence of the existence of fencing along lines which corresponded generally with the calls of the original survey. The only variances found in Gilbreath's property description and the original survey concerned distance, a factor ranking last in the dignity of calls. *See id.*

■ Likewise, we cannot say that the evidence supporting Gilley's property description is so overwhelming as to require a new trial. He did not conduct a resurvey to look for the footsteps of the original surveyor as could be gleaned from whatever might be found on the ground in the way of evidence of occupation by the tract owners. He gave no credence to Duncan's testimony as to reputation of the tract's location and fence lines. His "office survey" relied on the location of a beginning point of a neighboring survey, the location of which he never made upon the ground. Moreover, he relied on the east-west distance calls of the Witt to Myers tract to locate his Duncan tract northeast corner. However, the reliability of the 352½ varas called for in the original Witt to Myers deed was brought into question by evidence that the last recorded conveyance of that tract described the east-west distance as only 295 varas. Points of error one, two and three are overruled.

Point of error four presents City's claim that the metes and bounds description prepared by Gilley was the correct property description as a matter of law. Reliance is placed upon the following statement from the opinion in *Pritchard v. Burnsides*, 158 S.W.2d 586 (Tex.Civ.App.—Fort Worth 1942), *aff'd*, 140 Tex. 212, 167 S.W.2d 159 (1943):

> In a suit which in its nature is an undertaking to enforce the deed, as distinguished from a suit to cancel or reform it, the question of the intention of the parties to the deed will not be submitted to the jury. If the case requires an examination of surrounding facts and circumstances, as where there is an ambiguity in the deed or where one develops

when the description is applied to the ground, the jury may find what the surrounding facts and circumstances were, if there is a conflict in the testimony regarding them, but, when such facts are found, the court will determine the intention of the parties and will construe the deed.

*Id.*, 158 S.W.2d at 591.

*Pritchard* involved the intention of the parties in the partition of a survey into nine separate tracts in which the property descriptions in the deeds to the several tracts were prepared in an office survey relying only on the field notes of the original survey. *Id.* The Court's holding that the Court will determine the intention of the parties and will construe the deed is not applicable to the case before us. The intention of the parties was important in *Pritchard* because there was an undisputed conflict between the location of the Sabine River as placed by the office survey and the actual location of the river at the time of the office survey, consequently there were conflicts of property descriptions in the partition deeds. Such is not the case here. The boundary dispute in this case arose from meander of the Elm Fork subsequent to the execution of the Duncan deed. Intention of the parties to the deed is not in issue here, since there is no conflict between the deed's recitations and the then existing location of the Elm Fork of the Trinity. Point of error four is overruled.

City's next contentions are that the judgment is a nullity because it does not award title and possession to either party and there is no evidence of the Duncans' owning title to any property described in the judgment other than that disclaimed by the City. The portion of the judgment relevant to such claims is as follows:

IT IS THEREFORE ORDERED, ADJUDGED, and DECREED by the Court that Plaintiffs' tract of land which is the subject of this litigation, originally described in the deed from C.S. McLaughlin to Eugene Duncan dated January 28, 1880, can presently be located on the

ground in Denton County pursuant to the following property description....

It is true that rule 804, Texas Rules of Civil Procedure requires, in a trespass to try title action, the judgment in favor of a plaintiff "shall be that the plaintiff recover of the defendant the title *or* possession, or both ... of such premises...." [Emphasis added.] Even if the rule were applicable in this case, the above language of the judgment clearly recognizes the Duncans' superior title to and right of possession of "Plaintiff's tract of land." However, the case was tried and submitted to the jury as a boundary dispute with no issue as to title to the Duncan tract. Title was an issue until City, on the eve of the trial, withdrew its challenge to the Duncans' title to the land covered by the 1880 deed.

It is established that boundary disputes may be tried by a statutory action of trespass to try title. *Plumb v. Stuessy,* 617 S.W.2d 667, 669 (Tex.1981).

The proper test for determining if the case is one of boundary is as follows: If there would have been no case but for the question of boundary, then the case is necessarily a boundary case even though it might involve questions of title.

*Id.*

■ In the instant case, the Duncan family had used and occupied the completely fenced Duncan tract without claim by others to all or part of the tract. It is clear that City, as owner of lands to the east of the Duncan tract, wished to utilize all of its land beyond the Duncan tract boundary in building its golf course. This dispute arose solely from the disagreement as to the boundary between the two tracts. We hold this suit to be one of boundary. Since it is a boundary dispute, it was not necessary for the Duncans to establish their superior title in the manner required by a formal trespass to try title action. *Id.* Points of error five and six are overruled.

■ City's point of error seven is directed at the admissibility of Exhibits 9, 10 and 11, such exhibits being a Certificate of Redemption for Taxes and copies of a tax map from the Denton County Tax Office. The certificate of redemption was admitted for the limited purpose of showing that Denton County and the Independent School District levied tax on the Duncan tract based upon an area of eleven acres, immediately after R.A. Duncan had testified, without objection, that he had never paid taxes on the tract for anything less than eleven acres. Under the circumstances, and over the sole objection that the exhibit was not relevant to the location of the boundary of the tract, we find no error in the admission of the evidence. *See Bridges v. City of Richardson,* 163 Tex. 292, 354 S.W.2d 366, 368 (1962) (per curiam). Regarding the copies of maps on file in the tax office admitted ostensibly for all purposes over the objection of non-relevancy, we perceive no error is shown nor preserved. Certainly the information on the maps as to the size of the Duncan tract and the width of the tract adjoining it to the east are relevant to the boundary questions and regardless of other possible objections, is admissible under the relaxation of strict rules of evidence prevailing in this case as earlier discussed. *See also Wilkins v. Royal Indem. Co.,* 592 S.W.2d 64, 68 (Tex. Civ.App.—Tyler 1979, no writ) as to the general objection of "irrelevant." Point of error seven is overruled.

■ The City next urges that the cost of the Duncans' abstract of title should not be taxed as costs because it far exceeded the requirement of TEX.R.CIV.P. 793. This assertion is stated as "[i]nstead of summarizing plaintiffs' chain of title, plaintiffs' abstract contained copies of each and every document in plaintiffs' chain of title." Although the record does not substantiate the above, the Duncans' brief treats the last quoted statement as true.

An abstract's contents are described by rule 793 as follows:

The abstract mentioned in the two preceding rules shall state:

(a) The nature of each document or written instrument intended to be used as evidence and its date; or

(b) If a contract or conveyance, its date, the parties thereto and the date of

the proof of acknowledgment, and before what officer the same was made; and

(c) Where recorded, stating the book and page of the record.

(d) If not recorded in the county when the trial is had, copies of such instrument, with the names of the subscribing witnesses, shall be included. If such unrecorded instrument be lost or destroyed it shall be sufficient to state the nature of such instrument and its loss or destruction.

*Id.*

Some time ago this court observed that "abstract offices are the only convenient place where a person can obtain an abstract of title to real property," *see Tarrant County v. Rattikin Title Co.*, 199 S.W.2d 269, 273 (Tex.Civ.App.—Fort Worth 1947, no writ). In the case before us, it appears the abstract was prepared at a cost of $1131.00. The City's complaint is not that such charge was excessive, nor that it is improper to charge any cost of abstract to court costs, but it seems to assume there is necessarily a substantial difference between the cost of an abstractor locating each necessary document and preparing in writing all of the information required by the rule, and simply making a machine copy of the document so that it would be self expressive of those matters. In the absence of a record to substantiate that assumption we are unable to give it any credence. The expertise and time used to locate each abstracted document is the same in either case. When the document is before him, the abstractor may very well save time, and thus expense, by simply making a copy of it so that it will speak for itself. At any rate, City has not shown any harm to it, nor any authority in point for the proposition espoused. Point of error eight is overruled.

■ City's attack on the award of attorney's fees is predicated on its assertion that TEX.CIV.PRAC. & REM.CODE ANN. sec. 16.034(a) (Vernon 1986) provides for attorney's fees for a recovery only against a party claiming by adverse possession, and City was not claiming by adverse possession at trial. The appropriate portion of the code follows:

In a suit for the possession of real property between a person claiming under record title to the property and one claiming by adverse possession, if the prevailing party recovers possession of the property from a person unlawfully in actual possession, the court may award costs and reasonable attorney's fees to the prevailing party.

TEX.CIV.PRAC. & REM.CODE ANN. sec. 16.034(a). We have previously, in construing former TEX.REV.CIV.STAT.ANN. art. 5523b, *repealed by* Act of Sept. 1, 1985, ch. 959, sec. 9, 1985 Tex.Gen.Laws 3242, 3322, the predecessor of section 16.034, held that adverse possession in the context of the statute is viewed at the time of the filing of suit. *Smith v. Matthews*, 662 S.W.2d 150, 155 (Tex.App.—Fort Worth 1983, no writ). In the case before us, at the institution of the Duncans' suit, City claimed by adverse possession and continued to at all times prior to its disclaimer of title to the Duncan tract shortly before trial. It follows that attorney's fees were properly awarded against the party claiming by adverse possession.

■ City also urges that there was "no evidence of the proper amount" of such fees, since there was no allocation of the time spent by the attorneys in pursuing their several causes of action. The special issue requested the jury to find the Duncans' attorney fees for the entire case, rather than allocating the fees to each attorney fees-bearing claim. City posed no objection to the broad attorney fee issue, hence it waived its present right to complain of failure to allocate the fees among the Duncans' several causes of action. *Home Sav. Ass'n v. Guerra*, 733 S.W.2d 134, 137 (Tex.1987); *Matthews v. Candlewood Builders, Inc.*, 685 S.W.2d 649, 650 (Tex.1985) (per curiam). Points of error nine, ten and eleven are overruled.

City's final point of error is without merit. It complains of the award of damages to trees caused by the building of the golf course and asserts that its stipulation of the amount of such damages is tied to the

Duncans' ultimate recovery of title to the 10.94 acre tract described in answer "B" to Special Issue No. 1. The parties stipulated as follows:

> [T]hat in the event the Interlocutory Judgment signed by the Court on December 16, 1985, becomes the final judgment of the Court regarding the property owned by Plaintiffs, (such property being the 10.9 acres found by the jury to be the land which was the property described in the deed from McLaughlin to Duncan dated January 28, 1880), then the amount of damages caused to Plaintiffs' trees by the building of the golf course on the 10.9 acres is in the amount of $16,000.00.

The Interlocutory Judgment, with minor changes, became the final judgment of the trial court, signed on March 24, 1986. Thus, the stipulation by the parties regarding damages to the trees was not tied to appellees' recovery of title to the 10.94 acre tract described in answer "B" to Special Issue No. 1. Point of error twelve is overruled.

The judgment of the trial court is affirmed.