IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00368-CV

 

Lynda Marino,

                                                                                    Appellant

 v.

 

Charles King,

                                                                                    Appellee

 

 



From the 361st District Court

Brazos County, Texas

Trial Court No. 08-002628-CV-361

 



ORDER OF REFERRAL TO MEDIATION










 

            In her docketing statement filed with
this Court on November 30, 2009, appellant requests that this appeal be
referred to mediation.

            The Legislature has provided for the
resolution of disputes through alternative dispute resolution (ADR)
procedures.  See Tex. Civ. Prac.
& Rem. Code Ann. §§ 154.001-154.073 (Vernon 2005).  The policy behind
ADR is stated in the statute: “It is the policy of this state to encourage the
peaceable resolution of disputes . . . and the early settlement of pending
litigation through voluntary settlement procedures.”  Id. § 154.002
(Vernon 2005).  Mediation is a form of ADR.  Mediation is a mandatory but
non-binding settlement conference, conducted with the assistance of a
mediator.  Mediation is private, confidential, and privileged.

        We find that this appeal is appropriate
for mediation.  See id. § 154.021(a) (Vernon 2005); 10th Tex. App. (Waco)  Loc. R. 9.

        The parties are ordered to confer and
attempt to agree upon a mediator.  Within fourteen days after the date of this
Order, Appellant is ordered to file a notice with the Clerk of this Court which
either identifies the agreed-upon mediator or states that the parties are
unable to agree upon a mediator.  If the notice states that the parties are
unable to agree upon a mediator, this Court will assign a mediator.

        Mediation must occur within thirty days
after the date the above-referenced notice agreeing to a mediator is filed or,
if no mediator is agreed upon, within thirty days after the date of the order
assigning a mediator.

        No less than seven calendar days before
the first scheduled mediation session, each party must provide the mediator and
all other parties with an information sheet setting forth the party’s positions
about the issues that need to be resolved.  At or before the first session, all
parties must produce all information necessary for the mediator to understand
the issues presented.  The mediator may require any party to supplement the
information required by this Order.

        Named parties must be present during the
entire mediation process, and each corporate party must be represented by a
corporate employee, officer, or agent with authority to bind the corporate
party to settlement.

        Immediately after mediation, the mediator
must advise this Court, in writing, only that the case did or did not settle
and the amount of the mediator’s fee paid by each party.  The mediator’s fees
will be taxed as costs.  Unless the mediator agrees to mediate without fee, the
mediator must negotiate a reasonable fee with the parties, and the parties must
each pay one-half of the agreed-upon fee directly to the mediator.

        Failure or refusal to attend the mediation
as scheduled may result in the imposition of sanctions, as permitted by law.  

        Any objection to this Order must be filed
with this Court and served upon all parties within ten days after the date of
this Order, or it is waived.

        We
refer this appeal to mediation. 

PER
CURIAM

Before
Chief Justice Gray,

        Justice
Reyna, and

        Justice
Davis

Order
issued and filed December 9, 2009

Do
not publish






yle="text-decoration: underline">Factual & Procedural History
      This is an appeal from summary judgment in a trespass to try title action involving a small
strip of property between two adjoining lots in Corsicana, Texas. Higginbotham owns one of
the lots and Davis owns the other. There is a large building on the property that sits atop the
joint property line. Before December 23, 1982, both lots were owned by T. Walter Erwin. 
Davis purchased his lot on February 5, 1993. Higginbotham purchased his lot on February 1,
1996.
      In June 1997, Higginbotham sent Davis a letter stating that an interior wall (firewall) was
encroaching upon his property. The letter further stated that Davis should vacate and cease
possession of that portion of the land and building. Following unsuccessful attempts to reach
an agreement, Higginbotham brought this trespass to title action against Davis to determine
ownership of the disputed strip of property and to establish the proper boundary between the
two lots. 
      Higginbotham argued that the disputed area was encompassed in the property description
in the deed dated February 1, 1996, which he received from Ruth Erwin Lavendar, the trustee
under T. Walter Erwin’s will. Davis argued that the disputed area was encompassed in the
property description contained in the deed dated December 23, 1982 from T. Walter Erwin, Jr.
to Harvey T. Helms, through whom he had acquired title (Davis deed). 
      Davis filed a traditional motion for summary judgment which the trial court granted. The
trial court denied Higginbotham’s motion for a new trial and he filed his notice of appeal. 
Higginbotham argues that the trial court erred in granting the motion for summary judgment in
favor of Davis because: (1) the December 23, 1982 deed from Erwin to Helms is on its face
ambiguous and such ambiguity should be resolved by the trier of fact; (2) there existed a
material factual dispute regarding a conflict of calls of equal dignity; (3) there was insufficient
evidence before the court with regard to Davis’s claim as to the results of a survey; and (4)
there existed a dispute as to material questions of fact involving the conflicting opinions of the
two expert witnesses as contained in their sworn affidavits.
Was Summary Judgment Proper?
      The law in Texas is clear that in locating disputed boundary lines, priority must be given
to the calls of the original grant that are more specific and definite in preference to those
merely general and indefinite. Stafford v. King, 30 S.W. 257 (1867). The surveyor is to take
field notes on the land, which should include natural and artificial objects, if any, and courses
and distances. Id. Often, however, the objects or “calls” referenced in the field notes will
disappear over time. Therefore the law has created a priority, referred to as the dignity of
calls, when trying to reestablish the boundary in a later transfer of title. Id.
      The priority, or dignity of calls, is as follows: (1) natural objects; (2) artificial objects; (3)
course; and (4) distance. Id.; City of Carrollton v. Duncan, 742 S.W.2d 70, 72 (Tex.
App.—Fort Worth 1987, no writ). When there are conflicting calls of equal dignity, the call
that is most consistent with the intention of the surveyor as reflected by the entire description
will be followed. Sweats v. Southern Pine Lumber Co., 361 S.W.2d 214 (Tex. Civ.
App.—Houston 1962, writ ref’d n.r.e.). However, if the deed description, as applied to
physical facts, does not fix the location of the property, there is a question of fact to be
submitted to the jury. Compare Gage v. Owen, 435 S.W.2d 559 (Tex. Civ. App.—Fort Worth
1968, writ ref’d n.r.e.).
      The deed upon which Davis relied contained the following language:
BEGINNING at an iron stake at corner, the Southwest corner of said Block No.
388, in North line of West Seventh Avenue, at its intersection with South 18th Street in
said City of Corsicana; THENCE N 09 deg. 21 W 209 feet with the East line of 18th
Street to an iron stake in concrete sidewalk for corner; THENCE N 77 deg. 11' E 59
feet to an iron stake for corner; THENCE S 15 deg. 13' 40" E 184.61 feet through
the middle of building with firewall to an iron stake set on North line of West Seventh
Avenue for corner; THENCE S 60 deg. 15' W 83 feet with the North line of West
Seventh Avenue to the place of BEGINNING, containing 14.638 sq. ft. or 0.336 acre
of land (emphasis added).
The alleged ambiguity or dispute arises because the firewall is not in the middle of the building
and is not on the straight line between the described iron stakes at the corners.


 Higginbotham
argues that Erwin intended to convey the property to the point of the building along a straight
line between the two described corners through the building. He contends the reference to
“building with firewall” was only a way to identify the building through which the property
line would pass. Davis, on the other hand, argues that Erwin intended to convey the property
up to the firewall, thus using the firewall as a boundary between the two lots. However,
neither party addresses the route of the property line between the corners on the North and
South boundaries and the firewall, if the firewall is in fact the boundary line.
      We also note that the deed uses the words “with the” when it is obviously being used as
part of the property description, e.g. “with the East line of 18th Street” and “with the North
line of West Seventh Avenue” (emphasis added). However, when reference is made to the
firewall, which Davis contends is a call to an artificial monument and Higginbotham contends
is descriptive of the building, the terminology used is “through the middle of building with
firewall.” Neither party has explained why different language was used. 
      Davis argues that the firewall is an artificial monument and as such, is entitled to the
dignity of a monument. As part of his summary judgment evidence, Davis offered the affidavit
of R. L. Thigpin, a licensed surveyor, who was of the opinion that tracing the boundary line
from one corner iron stake along the firewall to the other corner stake results in a return to the
beginning point and complete closure of the description in the Davis deed. 
      Higginbotham contends that even if the firewall constitutes an artificial monument, the
dignity of such call conflicts with the references in the deed regarding the iron pipes (stakes


)
which were found on the ground. Higginbotham points to the sworn affidavit of Ronald
Waltrip, a licensed surveyor. Waltrip opined that “following the call to the wall would cause a
ridiculous result since it would cause all of the other calls in the description to be out of
harmony and create aberrations in existing monuments and adjoining surveys.” He further
stated that if the call to the wall is followed, it would cause a material change to the existing
surveys and monumentation of the adjoining lots because the corner stakes are not in alignment
with the firewall. 
      In this case the ambiguity or conflict of calls, if any, arises only after the surveyor’s notes
are applied to the ground; thus the parties’ intention should govern the outcome. If an
ambiguity exists on the face of the surveyor’s field notes, or arises only after the notes are
applied on the ground, the circumstances surrounding the intent of the parties still controls,
and all else must yield to and be governed by this intent. Thomas Jordan, Inc. v. Skelly Oil
Co., 296 S.W.2d 279, 291 (Tex. Civ. App—Texarkana 1956, writ ref’d n.r.e.). Intention of
the parties to a deed with respect to the boundaries is ordinarily a fact question. Bickler v.
Bickler, 403 S.W.2d 354, 361 (Tex. 1966); Haby v. Howard, 757 S.W.2d 34 (Tex. App.—San
Antonio 1988, writ denied). 
      Our duty on appeal is to view the evidence in the light most favorable to the nonmovant,
and all conflicts in the evidence will be disregarded and the evidence favorable to the
nonmovant will be accepted as true. See Harwell v. State Farm Mut. Ins. Co., 896 S.W.2d
170, 173 (Tex. 1995). The motion, response, and controverting affidavits, when read
together, contain sharp conflicts that raise material fact issues regarding the intent of the
grantor in defining the boundary and thus ownership of the disputed area. The trier of fact
should determine these issues. It has never been within the authority of the trial court hearing
a motion for summary judgment to determine the credibility of the affiants and to try the cause
on affidavits. See Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 931 (Tex. 1952).
      Thus, after reviewing the record and considering the summary judgment evidence, we
cannot say that the record establishes as a matter of law Davis’ ownership of the disputed strip
of land and the boundary between the adjoining lots. Summary judgment was therefore
improper.
Defective Judgment
      An additional problem here is that the land actually in controversy is nowhere in the
record described with such particularity as to be a legally sufficient description for the court’s
judgment in a trespass to title dispute. “A judgment rendered in an action of trespass to try
title should describe the land thereby affected with reasonable certainty.” Etheridge v. City of
Dallas, 246 S.W.2d 692 (Tex. Civ. App.—Waco 1952), aff’d, 253 S.W.2d 640 (Tex. 1952). 
The judgment in a trespass to try title case must so identify the land that an officer charged
with the duty of executing a writ of possession can locate the property without exercising
judicial functions. Zobel v. Slim, 576 S.W.2d 362 (Tex. 1978). The judgment should contain
a complete legal description of the property to which title has been established, so that
reference to extrinsic documents is unnecessary.
      Here, the trial court’s judgment is fatally defective because it does not fix the location on
the ground of the disputed common boundary and thus, fails to dispose of the controversy
between the parties. See State v. McHard, 432 S.W.2d 182 (Tex. Civ. App.—Houston 1968,
writ ref’d n.r.e.). The judgment settled nothing, leaving the parties exactly where they were
before the suit was filed. Id.Conclusion
      We reverse the judgment of the trial court granting summary judgment and remand this
cause to the trial court for a trial on the merits.
 
 
                                                                                 TOM GRAY
                                                                                 Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Reversed and remanded
Opinion delivered and filed December 13, 2000
Publish